## CHANDLER against EDSON.

<div style="float:left; width:25%">A person cannot lawfully enter on the lands of the *Stockbridge Indians,* and cut and carry away timber, growing thereon, even with their consent. Where a person by a written license from the *peacemakers of the tribe,* entered and cut down trees, of which he made shingles, it was held, that he was a trespasser, notwithstanding such license, and acquired no property in the timber or shingles.</div>

IN ERROR, on *certiorari*, from a justice's court. *Edson* brought an action of *trover* against *Chandler*, before the justice, for taking and converting 7,000 pine shingles, the property of the plaintiff. The defendant pleaded not guilty; and specially, that the plaintiff had made the shingles of timber while green, on land belonging to the *Stockbridge Indians,* and that he had so taken the timber and made the shingles on the land, as a trespasser. The plaintiff replied to the second plea, that he had cut the timber by consent of the "*Peacemakers,*" &c. of the tribe or nation.

On the trial, the plaintiff gave in evidence, a writing signed by two *peacemakers* of the *Stockbridge Indians,* dated the 23d *November,* 1809, giving license to *Joseph Pye,* to cut 10 pine trees on their undivided lands, by whoever he thought fit, and to build a hut to work in. One of the *peacemakers,* who was sworn as a witness, testified, that he executed the paper produced, and that the leave was given pursuant to a vote of the nation, and of the peacemakers. The plaintiff produced a writing, without date, signed by *Joseph Pye,* giving the plaintiff leave to cut the trees; and it was proved that *Pye* had said that he gave such a license to the plaintiff, but the time when it was given did not appear. It was proved that the plaintiff made the shingles, and that they were, afterwards, in the possession of the defendant. The justice gave judgment for the plaintiff, for 12 dollars and 25 cents. The justice, in his return, stated, that he did not take into consideration the right of the *Indians* to grant liberty to persons to cut

timber on the land, as he was of opinion there was not sufficient proof that the shingles were made on their land.

*N. Williams*, for the plaintiff in error.

*Kirtland*, contra.

*Per Curiam.* The facts stated in the case leave no room to doubt, that the shingles for which *Edson* brought the action, were made by him, from timber which he had cut upon the lands belonging to the *Stockbridge Indians.* If he acquired no right to cut the timber, and make the shingles, by virtue of the license granted by the *peacemakers* to *Joseph Pye*, the property in the shingles still remained in the *Indians. Edson* acquired no property in the shingles, as the fruit of his trespass, for if the license was void, his entry must be deemed wilful. (5 *Johns. Rep.* 348. 6 *Johns. Rep.* 168.) The decision of this case, then, turns upon the question, whether a person can, with the consent of the *Indians*, lawfully enter, cut and carry away the timber, growing upon the lands of the *Stockbridge Indians.* The court are of opinion that the entry was unlawful, and contrary to the provision in the *act relative to Indians*, passed 4th *April*, 1801, (*Laws*, vol. 1. 464.) The first section of that act (sess. 24. c. 147.) prohibits all persons, without the consent of the legislature, from entering on any *Indian* lands, by pretext or colour of any right or interest in the same, in consequence of any *Indian* contract. The second section, among other things, declares that no person shall sue on any contract made with the *Stockbridge Indians;* and the 9th section declares, that these *Indians* have no power to alienate, or lease, or dispose of their lands, or any part thereof. These several legislative provisions appear to be decisive against the validity of any *Indian* contract or license, to enter and appropriate their timber. If a person cannot enter, under pretext of any interest in their lands, and if they cannot even lease them, and if all contracts with the *Indians* are void, there cannot be a pretence for holding valid the agreement in the case before us. The 14th section of the act contains nothing repugnant to the other provisions. It only superadds a penalty against every person who shall enter, and cut down the timber on the *Indian* lands, without consent of the *peacemakers.* That consent may exempt him from

NEWYORK,    the penalty, but will not make the contract valid.    There is the
Oct. 1812.  same penalty for occupying and improving their lands, without
HEMSTRACT   consent; and it cannot surely be said, that the *Indian* consent to
v.          occupy and improve their lands, could be valid; for that would be
YOUNGS.     equivalent to a lease of them, and directly contrary to a prece-
            ding section in the act.

It was the wise policy of the statute to interdict all individual whites from any negotiation, or any contract with the *Indians*, in respect to their lands, or any interest therein.   Such a complete and total interdict was indispensable to save the *Indians* from falling victims to their own weakness, and to the intelligence, and, sometimes, the cupidity, of the whites.

<div align="right">Judgment reversed.</div>