## SUPREME COURT.

RACHEL SMITH and GEORGE SMITH, appellants, agt. JAMES MITTEN and others, respondents.

The complaint in the justice's court alleged that the defendants unlawfully and forcibly took and carried away a quantity of fire-wood of the goods and chattels of, and in the possession of the plaintiffs, and converted and disposed of the same to their own use.

The defendants answered, that such fire-wood was grown and cut upon the Tonawanda Reservation, in the county of Genesee; that such reservation is Indian lands, and is owned and occupied by the Seneca nation of Indians, and that they reside thereon; that the defendants are Seneca Indians, and occupy and reside on the said reservation, and are members of the said nation; and that, in their own right as such Indians, they took, carried away and converted the said wood, as they lawfully might do.

*Held*, that the answer set up *title* to lands by the defendants. The Indian title is described by the term *occupancy of their reservation*—they derive their right of no one, and hold it of nobody; there is therefore no distinction between their *occupancy* and their *title* to their reservation.

Smith and Smith agt. Mitten and others.

The answer set up that title, and it was necessary for them to do so, not only for the purpose of showing their own right to the wood, but also for the purpose of showing that the plaintiffs had no right to enter on the land and cut it, even by the *consent of the Indians*. (*See* 9 *John.* 362.)

*Justices' courts*, especially, should give suitors a fair and liberal opportunity for *amending* their allegations in pleadings, so as to present the real questions which they are prepared to litigate.

In this case, *held*, that whether the justice refused to grant the defendants liberty to make *any* amendments of their answer, or any amendments " for the purpose of again raising the question of title," his refusal was equally improper. The justice has no right to select what legal questions the parties may present to him for trial.

*Erie General Term, Jan., 1856.*

*Present,* BOWEN, P. J., MULLETT, GREENE *and* MARVIN, *Justices.*

APPEAL from a judgment of the county court of Genesee county reversing a judgment of a justice's court, on an appeal by the defendants in that court.

The action in the justice's court was for taking and detaining personal property. The plaintiffs, by their complaint, alleged that on, &c., and at, &c., in the county of Genesee, the defendants unlawfully, *and with* force and arms, took and carried away about thirty cords of fire-wood, the goods and chattels of, and in the possession of the plaintiffs, of the value of thirty dollars, and converted and disposed of the same to their own use, to the damage of the plaintiffs of $100, for which they demanded judgment.

The defendants, after denying the facts stated in the complaint, for a further answer thereto set up in writing, signed by them the following justification, to wit—

That the thirty cords of fire-wood were grown and cut upon the Tonawanda Reservation, which is also known and distinguished as the 12,800 acre tract in the county of Genesee. That such reservation is Indian lands, and is owned and occupied by the Seneca nation of Indians; that such Indians reside thereon; and that they are also distinguished as the Tonawanda band of the Seneca nation of Indians; that the defendants are Seneca Indians, and occupy and reside on the said reservation, and are members of the said band; and that in

their own right as such Indians, they took, carried away and converted the said thirty cords of fire-wood as they lawfully might do, which is the same cause of action alleged in the complaint. And at the time of putting in said answer, delivered to the said justice a written undertaking, pursuant to the 56th section of the Code of Procedure, and requested the said justice to discontinue the said action before him, on the ground that the answer showed that the title to the land on which the wood was cut would come in question on the trial of the said action; but the justice refused to discontinue the said action, for the reason that the answer did not show that the title to the said land would come in question—and rejected the said answer as insufficient as an answer of title. Thereupon the counsel for the defendants requested the justice for permission to amend the said answer by inserting allegations of those facts, in which it was considered insufficient, to raise the question of title; but the justice refused to permit any amendment for the purpose of again raising the question of title, and under the protest of the defendants' counsel, proceeded to try the said action upon the testimony produced by the plaintiffs, and rendered a judgment for the plaintiffs for $20.62 damages, and $5 costs. This is the judgment which was reversed by the county court, and from which the appeal is brought.

BROWN & GLOWACKI, *for appellants.*
WAKEMAN & BRYAN, *for respondents.*

By the court—MULLETT, Justice. This case, when before the county court, presented two questions—

*First.* Whether the justice erred in denying the defendants' application to discontinue the action before him, on the ground that their answer did not show that the question of title to land would come in question on the trial under that answer? and,

*Second.* Whether the refusal of the justice to permit the defendants to amend their answer as requested, and retaining jurisdiction and cognizance of the action, and giving judgment therein, was an error for which his judgment could legally be reversed by the county court?

If either of these questions ought to have been decided in favor of the appellants, by the county judge, his judgment reversing the judgment of the justice's court was right, and will be sustained.

*First.* As to the defendants' answer in the justice's court. The 55th section of the Code provides, that "in every action brought in a court of justice of the peace, where the title to real property shall come in question, the defendant may set forth in his answer *any matter* showing that said title will come in question, and the justice *shall* thereupon countersign the same, and deliver it to the plaintiff." By the 56th section, at the time of answering, the defendant shall deliver to the justice the undertaking prescribed by that section; and by the 57th section, upon the delivery of the undertaking to the justice, the action before him *shall* be discontinued, and each party *shall* pay his own costs.

It is admitted, by the justice's return, that the defendants' answer was in writing, signed by their attorney; that an undertaking, according to the 56th section of the Code, was delivered to him by the defendants at the time of answering, and was approved by him; and the only reason assigned by the justice for not discontinuing the action was, that the answer did not show that the title to land would come in question. And this presents the only point to be examined under this branch of the case.

The plaintiffs' complaint in the justice's court alleged that the defendants unlawfully and forcibly took and carried away a quantity of fire-wood of the goods and chattels of, and in the possession of the plaintiffs, and converted and disposed of the same to their own use.

The defendants, by their answer, proposed to justify the taking of the said fire-wood by showing that it was grown and cut upon the Tonawanda Reservation, in the county of Genesee; that such reservation is Indian lands, and is owned and occupied by the Seneca nation of Indians, and that they reside thereon; that the defendants are Seneca Indians, and occupy and reside on the said reservation, and are members of the said

nation; and that, in their own right as such Indians, they took, carried away and converted the said wood, as they lawfully might do.

The defendants' answer admitted the taking of the wood from the possession of the plaintiffs; and as possession of personal property is *prima facie* evidence of ownership, the plaintiffs had nothing to prove on their part to make out their case. The only question before the justice, under the answer, would have been, whether the defendants owned the wood, and therefore had a right to take it. This they proposed to show by proving that their tribe, as a nation of Indians, owned the land upon which it grew and was cut. If they proved the facts stated in their answer, they would have shown their ownership of the land, as Indians, and of the wood growing thereon; and which would have also shown that the plaintiffs could not lawfully have entered upon the land, and cut and carried away the wood growing there, even with the consent of the Indians. (*Chandler* agt. *Edson*, 9 *John. Rep.* 362.) This would have destroyed the presumption of the plaintiffs' ownership to be derived from possession of the wood, made them trespassers, and authorized the defendants to take the wood, unless the plaintiffs showed some lawful right to it. Instead of doubting whether the defendants' answer raised the question of title to the lands on which the wood was cut, I confess, I cannot see how the action could have been tried under that answer without an inquiry into the defendant's right to these lands as Indian lands. The defendants' right to the lands, and the wood growing thereon, depended on the fact that the lands were Indian lands, belonging to the Seneca nation, who occupied them, and that the defendants were Indians and members of that nation, and these facts constituted their *title* to the land and the wood. There is not in such a title several grades, as in our titles to lands:—1st. Mere possession or actual occupancy, without pretence of right: 2d. The right of possession which one man may have while another has the possession in fact: and, 3d. The mere right of property, which may exist without the possession, or right of possession, which being united constitutes

what *Blackstone* calls a complete legal title. (2 *Black. Com.* 195–199.) The Indian title is described by the term "occupancy of their reservation;" they derive their right of no one, and hold it of nobody. There is, therefore, no distinction between their occupancy and their title to their reservation.

The defendants' answer, in the case under consideration, set up that title, and it was necessary for them to do so, not only for the purpose of showing their own right to the wood, but for the purpose of showing that the plaintiffs had no right to enter on the land and cut it. Therefore, the answer set out a complete defence to the action, and ought not to have been rejected by the justice. The county court was right in reversing the judgment of the justice on that ground alone.

*Second.* The decision of the justice, refusing to permit the defendants to amend their answer, is still more indefensible. The justice knew that the answer was put in for the purpose of raising the question of title to the land on which the wood, which the defendants were accused of unlawfully taking, was cut. The terms of the answer, the undertaking which accompanied it, and the avowed purpose for which it was offered, left him no room to doubt upon that subject. He also ought to have known that the defendants had a legal right to set up such a defence, and thereby oust him of his jurisdiction of the action, and, instead of making his court a kind of technical snare, he ought to give his suitors a fair and liberal opportunity, by amending their allegations, to present the real questions which they were disposed to litigate. This is in accordance with the policy of the Code as applicable to all courts, and especially to courts of justices of the peace. (12 *Barb. S. C. Rep.* 535 ; 17 *id.* 141.)

Whether the justice refused to grant the defendants liberty to make *any* amendments of their answer, or any amendments "*for the purpose of again raising the question of title,*" his refusal was equally improper. The justice had no right to select what legal questions the parties might present to him for trial. He had just decided that the defendants' answer did not present the question which they wished to try, and he had no right to re-

fuse them permission to do so by amendment. On this ground, also, the county court was right in reversing the judgment of the justice's court.

Therefore, the judgment appealed from must be affirmed.