# George Wetherbee v. George Green, Charles H. Camp and George B. Brooks.

*Chattels: Title by accession: Change in form: Relative values.* No test, which satisfies the reason of the law, can be applied in the adjustment of questions of title to chattels, by accession, unless it keeps in view the circumstance of relative values. The purpose of the law will not be gained by establishing arbitrary distinctions, based upon physical reasons; but its object must be to adjust the redress afforded to one party and the penalty inflicted on the other, as near as circumstances will permit, to rules of substantial justice. A very great increase in value in the change of property from one form to another, is of more importance in determining the rights of parties in it, than any inexpensive chemical change, or mechanical transformation, however radical. And where timber—of the value of twenty-five dollars—had been, in the exercise of what was supposed to be proper authority, converted into hoops,—of the value of seven hundred dollars,—the title to the property, in its converted form, passed to the party by whose labor in good faith the change had been wrought.

*Deed intended as a security: Possession.* Though a deed, absolute in form but intended as a security, will leave in the grantor the right of a mortgagor to redeem, it does not follow that he would be entitled to maintain possession until foreclosure under § 4614, Comp. Laws.

*License to cut timber: Revocation.* A mere license to enter upon land and cut timber need not be in any particular form, nor will it confer any legal right to do so; but it will protect the licensee, so far as he has acted under it, until revocation. A conveyance by one of two tenants in common, of his interest in a tract of land, will not necessarily terminate an authority, derived from his co-tenant, to sell timber on the tract.

*Heard January 5, 6. Decided April 5.*

Error to Bay Circuit.

This was an action of replevin, brought by George Green, Charles H. Camp and George Brooks, in the Circuit Court for the County of Bay, against George Wetherbee, for one hundred and fifty-eight thousand black ash barrel hoops, alleged to be of the value of eight hundred dollars. The hoops were cut upon a tract of land which Green, one of the plaintiffs, and one Thomas Sumner had owned as tenants in common. Green, by parol, had authorized Sumner to sell timber from off the land. Afterwards, Sumner being indebted to Camp and Brooks, the other plaintiffs, conveyed to them, by warranty deed, his undivided half of the land,

they agreeing orally to re-convey upon payment. Sumner'
after his conveyance to Camp and Brooks, sold a quantity
of timber growing upon the land to Wetherbee, who cut
and manufactured the same into hoops,—for the possession
of which this action is brought.

On the trial, the Circuit Judge excluded the testimony
offered by the defendant, to show the character of the trans-
action between Sumner and Camp and Brooks, and the
license derived from Sumner to cut the timber; and under
the charge of the court the jury found for plaintiffs. The
judgment entered upon the verdict comes into this court by
writ of error.

*Marston & Hatch* for plaintiff in error.

*Clark & Day* for defendants in error.

COOLEY, J.

The defendants in error replevied of Wetherbee a quan-
tity of hoops, which he had made from timber cut upon
their land. Wetherbee defended the replevin suit on two
grounds. *First*, he claimed to have cut the timber under
a license from one Sumner, who was formerly tenant in
common of the land with Green, and had been authorized
by Green to give such license. Before the license was given,
however, Sumner had sold his interest in the land to Camp
and Brooks, the co-plaintiffs with Green, and had conveyed
the same by warranty deed; but Wetherbee claimed and
offered to show by parol evidence, that the sole purpose
of this conveyance was to secure a pre-existing debt from
Sumner to Camp and Brooks, and that consequently it
amounted to a mortgage only, leaving in Sumner, under our
statute, the usual right of a mortgagor to occupy and con-
trol the land until foreclosure. He also claimed that the

authority given by Green to Sumner had never been revoked, and that consequently the license given would be good against Green, and constitute an effectual bar to the suit in replevin, which must fail if any one of the plaintiffs was precluded from maintaining it.

But if the court should be against him on this branch of the case, Wetherbee claimed further that replevin could not be maintained for the hoops, because he had cut the timber in good faith, relying upon a permission which he supposed proceeded from the parties having lawful right to give it, and had, by the expenditure of his labor and money, converted the trees into chattels immensely more valuable than they were as they stood in the forest, and thereby he had made such chattels his own. And he offered to show that the standing timber was worth twenty-five dollars only, while the hoops replevied were shown by the evidence to be worth near seven hundred dollars; also, that at the time of obtaining the license from Sumner he had no knowledge of the sale of Sumner's interest, but, on the other hand, had obtained an abstract of the title to the premises from a firm of land agents at the county seat, who kept an abstract book of titles to land in that county, which abstract showed the title to be in Green and Sumner, and that he then purchased the timber, relying upon the abstract, and upon Sumner's statement that he was authorized by Green to make the sale. The evidence offered to establish these facts was rejected by the court, and the plaintiffs obtained judgment.

The principal question which, from this statement, appears to be presented by the record, may be stated thus: Has a party who has taken the property of another in good faith, and in reliance upon a supposed right, without intention to commit wrong, and by the expenditure of his money or labor, worked upon it so great a transformation as that

22 MICH.—40.

which this timber underwent in being transformed from standing trees into hoops, acquired such a property therein that it cannot be followed into his hands and reclaimed by the owner of the trees in its improved condition?

The objections to allowing the owner of the trees to reclaim the property under such circumstances are, that it visits the involuntary wrong-doer too severely for his unintentional trespass, and at the same time compensates the owner beyond all reason for the injury he has sustained. In the redress of private injuries the law aims not so much to punish the wrong-doer as to compensate the sufferer for his injuries; and the cases in which it goes farther and inflicts punitory or vindictive penalties are those in which the wrong-doer has committed the wrong recklessly, willfully, or maliciously, and under circumstances presenting elements of aggravation. Where vicious motive or reckless disregard of right are not involved, to inflict upon a person who has taken the property of another, a penalty equal to twenty or thirty times its value, and to compensate the owner in a proportion equally enormous, is so opposed to all legal idea of justice and right and to the rules which regulate the recovery of damages generally, that if permitted by the law at all, it must stand out as an anomaly and must rest upon peculiar reasons.

As a general rule, one whose property has been appropriated by another without authority has a right to follow it and recover the possession from any one who may have received it; and if, in the meantime, it has been increased in value by the addition of labor or money, the owner may, nevertheless, reclaim it, provided there has been no destruction of substantial identity. So far the authorities are agreed. A man cannot generally be deprived of his property except by his own voluntary act or by operation of law; and if unauthorized parties have bestowed expense or

labor upon it that fact cannot constitute a bar to his reclaiming it, so long as identification is not impracticable. But there must, nevertheless, in reason be some limit to the right to follow and reclaim materials which have undergone a process of manufacture. Mr. Justice Blackstone lays down the rule very broadly, that if a thing is changed into a different species, as by making wine out of another's grapes, oil from his olives, or bread from his wheat, the product belongs to the new operator, who is only to make satisfaction to the former proprietor for· the materials converted.—*2 Bl. Com., 404.* We do not understand this to be disputed as a general proposition, though there are some authorities which hold that, in the case of a willful appropriation, no extent of conversion can give to the willful trespasser a title to the property so long as the original materials can be traced in the improved article. The distinction thus. made between the case of an appropriation in good faith and one based on intentional wrong, appears to have come from the civil law, which would not suffer a party to acquire a title by accession, founded on his own act, unless he had taken the materials in ignorance of the true owner, and given them a form which precluded their being restored to their original condition.—*2 Kent, 363.* While many cases have followed the rule as broadly stated by Blackstone,. others have adopted the severe rule of the civil law where the conversion was in willful disregard of right. The New York cases of *Betts v. Lee, 5 Johns., 348;  Curtis v. Groat, 6 Johns., 168;* and *Chandler v. Edson, 9 Johns., 362,* were all cases where the willful trespasser was held to have acquired no property by a very radical conversion, and in *Silsbury v. McCoon, 3 N. Y., 378, 385,* the whole subject is very fully examined, and Ruggles, J., in delivering the opinion of the court, says that the common law and the civil law agree "that if the chattel wrong

fully taken come into the hands of an *innocent holder* who, believing himself to be the owner, converts the chattel into a thing of different species, so that its identity is destroyed, the original owner cannot reclaim it. Such a change is said to be wrought when wheat is made into bread, olives into oil, or grapes into wine. In a case of this kind, the change in the species of the chattel is not an intentional wrong to the original owner. It is, therefore, regarded as a destruction or consumption of the original materials, and the true owner is not permitted to trace the identity into the manufactured article, for the purpose of appropriating to his own use the labor and skill of the innocent occupant who wrought the change; but he is put to his action for damages as for a thing consumed, and may recover its value as it was when the conversion or consumption took place," and further on he says of the civil law, with which the common law is supposed by him to harmonize:—" The acknowledged principle of the civil law is that a willful wrong-doer acquires no property in the goods of another either by the wrongful taking, or by any change wrought in them by his labor or skill, however great that change may be. The new product in its improved state belongs to the owner of the original materials, provided it be proved to be made from them; the trespasser loses his labor, and that change which is regarded as a destruction of the goods, or an alteration of their identity in favor of an honest possessor, is not so regarded as between the original owner and a willful violator of his right of property." In further illustration of the same views we refer to *Hyde v. Cookson, 21 Barb., 104; Martin v. Porter, 5 M. & W., 351; Wild v. Holt, 9 M. & W., 672; Baker v. Wheeler, 8 Wend., 508; Snyder v. Vaux, 2 Rawle, 427; Riddle v. Driver, 12 Ala., 590.*

It does not become necessary for us to consider whether

the case of *Silsbury v. McCoon, 3 N. Y., 378,* which over-ruled the prior decisions of the Supreme Court (reported in *4 Denio, 425,* and *6 Hill, 332* ), has not recognized a right in the owner of the original materials to follow them under circumstances when it would not ˮbe permitted by the rule as recognized by the authorities generally.    That was the case where a willful trespasser had converted corn into whisky, and the owner of the corn was held entitled to the manufactured article.   The rule as given by Blackstone would confine the owner, in such case, to his remedy to recover damages for the original taking.    But we are not called upon in this case to express any opinion regarding the rule applicable in the case of a willful trespasser, since the authorities agree in holding, that when the wrong had been involuntary, the owner of the original materials is precluded, by the civil law and common law alike, from following and reclaiming the property after it has under-gone a transformation which converts it into an article substantially different.

The cases of confusion of goods are closely analogous•  It has always been held that he who, without fraud, inten-tional wrong, or reckless disregard of the rights of others, mingled his goods with those of another person, in such manner that they could not be distinguished, should, never-theless, be protected in his ownership so far as the circum-stances would permit.    The question of motive here becomes of the highest importance; for, as Chancellor Kent says, if the commingling of property "was willfully made without mutual consent,  *  *  the common law gave the entire property, without any account, to him whose prop-erty was originally invaded, and its distinct character destroyed. *Popham's Rep. 38, pl. 2.*  If A will willfully intermix his corn or hay with that of B, or casts his gold into another's crucible, so that it becomes impossible to

distinguish what belonged to A from what belonged to B, the whole belongs to B.—*Popham's Rep. ub. supra ; Warde v. Ayre, 2 Bulst. 323," 2 Kent 364-5 ;* and see *2. Bl. Com., 404; Hart v. Ten Eyck, 2 Johns. Ch., 62 ; Gordon v. Jenney, 16 Mass., 465; Treat v. Barber, 7 Conn., 280; Barron v. Cobleigh, 11 N. H., 561 ; Roth v. Wells, 29 N. Y., 486 ; Willard v. Rice, 11 Met., 493 ; Jenkins v. Steanka, 19 Wis., 128 ; Hesseltine v. Stockwell, 30 Me., 237.* But this rule only applies to wrongful or fraudulent intermixtures. There may be an intentional intermingling and yet no wrong intended; as where a man mixes two parcels together, supposing both to be his own; or, that he was about to mingle his with his neighbor's, by agreement, and mistakes the parcel. In such cases, which may be deemed accidental intermixtures, it would be unreasonable and unjust that he should lose his own or be obliged to take and pay for his neighbor's, as he would have been under the civil law.—*Morton J. in Ryder v. Hathaway, 21 Pick., 305.* In many cases there will be difficulty in determining precisely how he can be protected with due regard to the rights of the other party; but it is clear that the law will not forfeit his property in consequence of the accident or inadvertence, unless a just measure of redress to the other party renders it inevitable.—*Story on Bailm.,* § *40; Sedg. on Dams., 483.*

The important question on this branch of the case appears to us to be, whether standing trees, when cut and manufactured into hoops, are to be regarded as so far changed in character that their identity can be said to be destroyed within the meaning of the authorities. And as we enter upon a discussion of this question, it is evident at once, that it is difficult, if not impossible, to discover any invariable and satisfactory test which can be applied to all the cases which arise in such infinite variety. " If grain be taken

and made into malt, or money taken and made into a cup, or timber taken and made into a house, it is held in the old English law that the property is so altered as to change the title.—*Bro. tit. Property, pl. 23;* " *2 Kent, 363.* But cloth made into garments, leather into shoes, trees hewn or sawed into timber, and iron made into bars, it is said may be reclaimed by the owner in their new and original shape.—*Sedg. on Dams., 484; Snyder v. Vaux, 2 Rawle, 427; Betts v. Lee, 5 Johns., 348; Curtis v. Groat, 6 Johns., 168; Brown v. Sax, 7 Cow., 95; Silsbury v. McCoon, 4 Denio, 333, per Bronson J.; Ibid, 6 Hill, 426, per Nelson, Ch. J.; Ibid, 3 N. Y., 386, per Ruggles, J.* Some of the cases place the right of the former owner to take the thing in its altered condition upon the question whether its identity could be made out by the senses.—*Year Book 5, H. 7, fo. 15, pl. 6.; 4 Denio, 335 note.* But this is obviously a very unsatisfactory test, and in many cases would wholly defeat the purpose which the law has in view in recognizing a change of title in any of these cases. That purpose is not to establish any arbitrary distinctions, based upon mere physical reasons, but to adjust the redress afforded to the one party and the penalty inflicted upon the other, as near as circumstances will permit, to the rules of substantial justice.

It may often happen that no difficulty will be experienced in determining the identity of a piece of timber which has been taken and built into a house; but no one disputes that the right of the original owner is gone in such a case. A particular piece of wood might perhaps be traced without trouble into a church organ, or other equally valuable article; but no one would defend a rule of law which, because the identity could be determined by the senses, would permit the owner of the wood to appropriate a musical instrument, a hundred or a thousand times the

value of his original materials, when the party who, under like circumstances, has doubled the value of another man's corn by converting it into malt, is permitted to retain it, and held liable for the original value only. Such distinctions in the law would be without reason, and could not be tolerated. When the right to the improved article is the point in issue, the question, how much the property or labor of each has contributed to make it what it is, must always be one of first importance. The owner of a beam built into the house of another loses his property in it, because the beam is insignificant in value or importance as compared to that to which it has become attached, and the musical instrument belongs to the maker rather than to the man whose timber was used in making it,—not because the timber cannot be identified, but because in bringing it to its present condition the value of the labor has swallowed up and rendered insignificant the value of the original materials. The labor, in the case of the musical instrument, is just as much the principal thing as the house is in the other case instanced; the timber appropriated is in each case comparatively unimportant.

No test which satisfies the reason of the law can be applied in the adjustment of questions of title to chattels by accession, unless it keeps in view the circumstance of relative values. When we bear in mind the fact that what the law aims at is the accomplishment of substantial equity, we shall readily perceive that the fact of the value of the materials having been increased a hundred fold, is of more importance in the adjustment than any chemical change or mechanical transformation, which, however radical, neither is expensive to the party making it, nor adds materially to the value. There may be complete changes with so little improvement in value, that there could be no hardship in giving the owner of the original materials the improved

article; but in the present case, where the defendant's labor—if he shall succeed in sustaining his offer of testimony—will appear to have given the timber in its present condition nearly all its value, all the grounds of equity exist which influence the courts in recognizing a change of title under any circumstances.

We are of opinion that the court erred in rejecting the testimony offered. The defendant, we think, had a right to show that he had manufactured the hoops in good faith, and in the belief that he had the proper authority to do so; and if he should succeed in making that showing, he was entitled to have the jury instructed that the title to the timber was changed by a substantial change of identity, and that the remedy of the plaintiff was an action to recover damages for the unintentional trespass.

This view will dispose of the case upon the present record. Upon the other points we are not prepared to assent entirely to the views of the plaintiff in error. It does not appear to us important that the deed from Sumner to Camp and Brooks was intended as a mere security. Under such a deed Sumner would have had a right of redemption, but it does not follow that he would have been entitled to possession, and to all the other rights of mortgagor in the courts of law. When a deed absolute in form is given to secure a debt, the purpose generally is, to vest in the grantee a larger power of control and disposition than he would have by statute under an ordinary mortgage; and we are not prepared to say that the statute— *Comp. L.*, § *4614*—which forbids ejectment by mortgagees before foreclosure was intended to reach a case of that description. We think, however, that the mere circumstance of the sale of Sumner's interest did not operate in law as a revocation of the authority previously given to Sumner to sell the timber. It is quite possible that Green

22 mich.—41.

would not have given his authority had Sumner not been tenant in common of the land with him; but there is no absolute presumption of the law to that effect; and we cannot say that Green would have revoked the authority had he been aware of Sumner's conveyance. Nor was it necessary that the license given by Sumner to Wetherbee should have been in any particular form. A mere license to enter upon land and cut timber does not confer a legal right to do so; but it nevertheless protects the licensee so far as he has acted under it before revocation, and the protection does not depend upon its form, but upon what has been done having proceeded by consent. However informal the consent may have been, the land owner cannot be allowed, by afterwards recalling it, to make the licensee a trespasser for what he has done in reliance upon it.

For the reasons given, the judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.