KEWEENAW ASSOCIATION *v.* O'NIEL.

1. HIGHWAYS—DONATION OF RIGHT OF WAY—CONDITIONS.

Permission to road commissioners to open a highway across timber land provided they make payment for the timber cut by them, the amount of such timber to be estimated by the owner after the line of the road is staked out by the commissioners, gives them no authority to cut trees on the proposed right of way before the owner has had an opportunity to make his estimate.

2. ACCESSION—CONFUSION OF GOODS.

The owner of logs which another manufactures into lumber, and in good faith mingles with his property of like kind and equal value, does not acquire title to the whole, but can only claim a proportionate share of the lumber.

Error to Gogebic; Haire, J. Submitted April 4, 1899. Decided May 23, 1899.

Replevin by the Keweenaw Association, Limited, against Charles O'Niel. From a judgment for defendant, plaintiff brings error. Reversed.

*Ball & Ball*, for appellant.

*Button & Norris*, for appellee.

HOOKER, J. The plaintiff brought replevin for a quantity of lumber which defendant caused to be manufactured from timber cut from land owned by the plaintiff. By way of defense the defendant asserted that some of this lumber was cut from trees that he obtained from another locality, and the remainder was the product of two trees that were cut by road commissioners in constructing a highway upon the premises of the plaintiff, and that the same were taken by him under permission given him by the road commissioners. There was evidence tending to prove the first of these claims, and the jury seem to have

found it to be true.  The second was proved by the undisputed evidence, and the court directed the jury to find for the defendant as to the two trees.  Upon a general verdict and judgment for the defendant, the plaintiff has brought error, and contends that the defendant acquired no title to the two trees.

The defendant proved by one Sherman that he (Sherman) was the manager of J. M. Longyear's land office at Marquette; that Mr. Longyear was the land agent of the plaintiff, and the office mentioned was the office of the plaintiff; and that, in the ordinary course of business, correspondence relative to lands belonging to the plaintiff passed through the hands of the witness.  The following letters were thereupon read in evidence:

"J. M. LONGYEAR, AGENT,
"THE KEWEENAW ASSOCIATION (LIMITED).
"MARQUETTE, MICH., May 31, 1895.
"CONRAD CARLSON, ESQ.,                                    (C. T.)
"Clerk Board of County Road Commissioners,
"Bessemer, Mich.

"*Dear Sir:* The question of granting the right of way asked for by your board, as per your letter of the 27th inst., has been referred to the owners of the lands touched by the highway in question, and I will advise you in due course as may be directed.  Permit me to inquire upon what grounds the board of county road commissioners have assumed to act in the matter of opening a local road lying wholly within the boundaries of Ironwood township. Why is it that the township authorities are not moving in the matter of this highway, instead of the county board?
"Yours truly,
"Dictated S.                              J. M. LONGYEAR, Agent.
"M."

"J. M. LONGYEAR, AGENT,
"THE KEWEENAW ASSOCIATION (LIMITED).
"MARQUETTE, MICH., July 2, 1895.
"CLERK OF GOGEBIC COUNTY,                                 (C. T.)
"Bessemer, Mich.

"*Dear Sir:* Referring to your application of the 27th of May, on behalf of the board of county road commissioners, for the right of way for a highway in towns

47–47 and 48–47, same has been referred to the owners of the following described lands; and I am directed to advise you that the right of way will be donated, providing the board will provide and make payment for the value of timber to be cut in opening the right of way. The lands herein referred to are the entire section 3, and the N. E. qr. section 9, 47–47, and the S. E. qr. section 33, 48–47, from the south line northerly to the main line of the Duluth, South Shore & Atlantic Ry. Will you please have me advised as to when the board will have the line of the road staked out, so that we can go over it and estimate the amount of timber that will be cut, and also send me map or other description that will give me the width to be cut on our land ? We would prefer to estimate the timber after the line is actually staked out on the ground, if practicable, as in that way we will have the correct estimate of the timber.

"Yours truly,

"Dictated S.        J. M. Longyear, Agent.

"M."

The plaintiff contends that this testimony does not show that the road commissioners were given authority to cut the two trees standing upon the proposed right of way; and, if the letters were to be so construed, it does not appear that Longyear authorized the writing of said letters, or that he had authority to do so if he did. We think the plaintiff is justified in its contention. The letters indicate a willingness to permit the construction of the highway. They give no authority to do so, or to cut timber, except upon the condition stated therein. They contemplated that the plaintiff should have an opportunity to estimate the timber before it was cut, and did not authorize the cutting of timber until that condition was complied with. It follows that the judgment must be reversed.

There is another question raised by the record, which may arise upon another trial. The logs from the two trees, which, upon this record, appear to be the property of the plaintiff, were commingled with the logs from other trees, which the jury must have found to have been cut from lands not belonging to the plaintiff. It is contended,

however, that this commingling of the logs resulted in such a confusion of property as to give the plaintiff the title to the whole. The doctrine of accession through confusion of goods is old. *Stephenson* v. *Little*, 10 Mich. 433; *Wetherbee* v. *Green*, 22 Mich. 317 (7 Am. Rep. 653); *Fowler* v. *Hoffman*, 31 Mich. 225. But it involves a forfeiture, and is never applied where it can be consistently avoided. In *Wetherbee* v. *Green* it is said:

"But this rule only applies to wrongful or fraudulent intermixtures. There may be an intentional intermingling, and yet no wrong intended; as where a man mixes two parcels together, supposing both to be his own, or that he was about to mingle his with his neighbor's, by agreement, and mistakes the parcel. In such cases, which may be deemed accidental intermixtures, it would be unreasonable and unjust that he should lose his own, or be obliged to take and pay for his neighbor's, as he would have been under the civil law. Morton, J., in *Ryder* v. *Hathaway*, 21 Pick. 305. In many cases there will be difficulty in determining precisely how he can be protected with due regard to the rights of the other party; but it is clear that the law will not forfeit his property in consequence of the accident or inadvertence, unless a just measure of redress to the other party renders it inevitable. Story, Bailm. § 40; Sedg. Dam. 483."

In such cases, as in those where the commingling is lawful, as by agreement, the rule does not apply, and the parties become tenants in common of the whole. 6 Am. & Eng. Enc. Law (2d Ed.), 593, and cases cited. There is no reason why the same rule should not apply in any case where the goods are identical in quality, and of equal value. Id. 597. The law will not deprive a wrong-doer of his property, if it can be justly avoided; and in the case of *Mittenthal* v. *Heigel*, (Tex. Civ. App.) 31 S. W. 87, it is said that, when mortgaged property is commingled with property of like kind and equal value, the more equitable doctrine of giving to each party his due proportion will govern, rather than the harsher one of holding the whole subject to the mortgage. See, also, *D. M. Osborne &*

*Co.* v. *Cargill Elevator Co.*, 62 Minn. 400; *Armstrong* v. *McAlpin*, 18 Ohio St. 184.

The record discloses no bad faith, and there is nothing to indicate a difference in quality or value of the lumber of the same kind. If, therefore, the plaintiff was entitled to the product of the two trees, it should have contented itself with a proportionate share of the lumber.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.