STANDARD OIL COMPANY, a Corporation, Appellant, v. WM. J BRAUN, Respondent.

(204 N. W. 972.)

**Claim and delivery — refusal to permit recovery, in claim and delivery of building which had become part of defendant's realty, held proper.**

In an action in claim and delivery for the recovery of a certain building, it is *held*, for reasons stated in the opinion that the trial court was correct in holding that the building had become part of defendant's realty, and that plaintiff might not recover possession thereof in claim and delivery.

Opinion filed August 4, 1925.

Fixtures, 26 C. J. § 14 p. 664 n. 5; § 28 p. 672 n. 63; § 39 p. 676 n. 21; § 128 p. 735 n. 67.

From a judgment of the District Court of Richland County, *Wolfe,* J., plaintiff appeals.

Affirmed.

*Conmy, Young & Burnett,* for appellant.

The parties concerned may, by agreement in due form, give to fixtures the legal character of realty or personalty at their option, and the law will respect and enforce their understanding, whenever the rights of third parties will not be prejudiced. Myrick v. Bill, 3 Dak. 284.

Parties are at liberty to make any agreement or arrangement with regard to their property that they see fit, and to give to fixtures the legal character of realty or personalty at their option; and, if the

agreement is such a one as will make the property personal property, as between the parties, it is personal property and may be so treated. Myrick v. Bill, 3 Dak. 284, 17 N. W. 268; Cooley, Torts, 427, 430; Matthews v. Hanson, 19 N. D. 694.

Annexation by bailee to his land of personal property bailed, with or without the knowledge and consent of the bailor, does not make it realty, and the bailor can recover it from the bailee's grantee, even though he is an innocent purchaser, unless the annexation was of such a character that the identity of the chattel is lost, and it cannot be removed without substantial injury to itself or the real estate. Standard Oil Co. v. Dolgin, 115 Atl. 235.

Since the title to land cannot be litigated in an action of replevin, the general rule is that replevin cannot be maintained for the recovery of possession of a house attached to the freehold. However, a house, which by the express contract of the parties, or by implied agreement, is treated as personalty, may be the subject of replevin. 34 Cyc. 1366; Page v. Ulrick, 72 Pac. 454.

It is well settled that a party dealing with the agent of a corporation must, at his peril, ascertain what authority the agent possesses, and is not at liberty to charge the principal by relying upon the agent's assumption of authority, which may prove to be entirely unfounded. Rice v. Peninsular Club, 52 Mich. 90, 17 N. W. 708; Mechem, Agency, # 137; Plano Mfg. Co. v. Root, 3 N. D. 165, 54 N. W. 924; Hodson v. Wells & D. Co. 31 N. D. 404.

Agency will not be presumed, and where its existence is denied, the burden of proof is upon him who asserts its existence.

The extent of an agent's authority depends upon the will of the principal, and the latter will be bound by the acts of the former only to the extent of the authority, actual or apparent, which he has conferred upon the agent. Martinson v. Kershner, 32 N. D. 47.

*Lauder & Lauder,* for respondents.

"The principal is liable for all such acts and statements of his agent as he may have expressly authorized; and this includes by implication, whether the agency be general or special, all such powers as are necessary and proper as a means of effectuating the purposes for which the agency was created. Being clothed with power to do a particular act, the agent will be deemed to have also whatever author-

ity attaches to the doing of the act or is necessary to its performance, etc." 21 R. C. L. p. 853.

The apparent authority so far as third persons are concerned is the real authority, and when a third person has ascertained the apparent authority with which the principal has clothed the agent, he is under no further obligation to inquire into the agent's actual authority. First Nat. Bank v. Henry, 30 N. D. 324; Holbert v. Webber, 36 N. D. 106.

An action of replevin is one for the recovery solely of personal property and cannot be maintained to recover things in the class of fixtures while they are affixed to the freehold. 23 R. C. L. p. 858.

CHRISTIANSON, Ch. J. The plaintiff brought this action to recover the possession of a certain service station building in the possession of, and occupied by, the defendant in the city of Wahpeton, in this state. In its complaint plaintiff alleges that it leased this building to the defendant for the period of one year commencing June 1st, 1923, and ending May 31st, 1924; that at the expiration of said lease plaintiff became and was entitled to the immediate and exclusive possession of the building; that defendant since June 1st, 1924, has wrongfully detained the building from the plaintiff. In addition to possession of the building the plaintiff asked judgment for damages for the use and occupancy thereof after June 1st, 1924, in the sum of $25 per month. In its answer the defendant alleges that some time prior to May 31, 1923, the plaintiff owned a certain service station building then located upon the right-of-way of the Great Northern Railway Company in the city of Breckenridge, in the state of Minnesota; that the building so located was purchased by the defendant from the plaintiff for the sum of $200; that the plaintiff delivered possession of the building to the defendant and "that the defendant thereupon at his own cost and expense, and to the knowledge and with the permission of the plaintiff removed said building to the city of Wahpeton, North Dakota, where he placed the same upon land belonging to himself, placing the same upon a concrete foundation prepared for that purpose, all with the knowledge and consent of plaintiff; and that thereupon the defendant converted said building into a service station, in which to sell, and in which he sold at retail to the gen-

eral public, gasoline, lubricating oils and other merchandise commonly used by those operating automobiles." That after the defendant had established said service station he entered into a contract with the plaintiff whereby the plaintiff agreed that if the defendant would, in such service station, handle exclusively the plaintiff's merchandise, to-wit, gasoline and lubricating oils manufactured and sold by the plaintiff for a period of one year at prices then ageed upon, the plaintiff would reduce the purchase price of said building from the sum of $200 to the sum of $60, said $60 to be paid in monthly payments of $5 per month; that subsequently and on or about May 21st, 1923, the plaintiff by its duly authorized agent presented a lease to the defendant for execution whereby said service station was leased to the defendant for the period of one year; that the defendant refused to sign said lease, stating to said plaintiff's agent that he had purchased the building from the plaintiff and that he was entitled to and wished a bill of sale and not a lease; that said plaintiff's agent thereupon informed defendant that such lease was intended solely for the purpose of carrying out their agreement and that when defendant had paid the sum stipulated in said lease, to wit, the sum of $60 payable in monthly payments of $5 per month, the building would belong to him. The answer further sets forth a counterclaim claiming damages for the breach of an alleged contract on the part of the plaintiff to close its retail service station in Wahpeton. The case was tried to the court and a jury. At the close of the entire case both parties made motions for a directed verdict. The court granted plaintiff's motion insofar as it related to the defendant's counterclaim, that is, the court dismissed the counterclaim, and granted defendant's motion for a dismissal of plaintiff's action. Defendant's motion was granted on the theory that the building in question had become a part of the real estate, and, hence, possession thereof could not be recovered in an action in claim of delivery. The defendant, in submitting his motion for an advised verdict, specifically requested that in event the motion were denied, the issues of fact be submitted to the jury. The plaintiff, however, expressly waived the right to have issues of fact submitted to the jury. Judgment was entered in defendant's favor dismissing the action and the plaintiff has appealed from the judgment.

The material facts are as follows: In the spring of 1923 the de-

fendant Braun was, and for some time prior thereto had been, operating a tire service and repair shop in the city of Wahpeton. He had decided to enlarge his business and to add thereto the sale of gasoline and lubricating oil, and had purchased a gasoline pump which had been delivered at his place of business but had not been installed. At this time one Leonard was district superintendent of the plaintiff company in a certain district between Fergus Falls, Minnesota, and Ellendale and Oakes, North Dakota. This district included Breckenridge, Minnesota and Wahpeton, North Dakota. It was the duty of the district superintendent to sell Standard Oil Products in his district, and to oversee the property of the plaintiff and supervise its employees in his district. The plaintiff was operating a retail service station, and, also, a bulk sales station at Wahpeton, North Dakota. One Weeks was its salesman, and in charge of its service station at this point. His duties were, in part, to act as its general agent and supervise its business in that locality. In some manner Weeks had become aware of the fact that the defendant was about to engage in the business of selling gasoline and lubricating oils and he communicated this fact to the district superintendent, Leonard; and some time in March 1923 these two called on the defendant. At this time the plaintiff owned a service station building located in the city of Breckenridge, in the state of Minnesota, which had not been operated as a service station for some three years or over. This service station building was situated on the right-of-way of the Great Northern Railway Company and had become unavailable as a service station about 1920 when the streets in Breckenridge adjacent thereto had been graded so as to place the service station some three or four feet below the level of the adjacent streets. The plaintiff had built a new service station in Breckenridge, and ceased to use the one so located on the Great Northern Railway Company right-of-way. The undisputed evidence is to the effect that this building formed the principal topic of conversation between the defendant and the district superintendent and plaintiff's agent at Wahpeton; but there is a square conflict in the evidence as to the arrangement that was made between the defendant and these representatives of the plaintiff as regards the building. The defendant contends that a definite agreement was made whereby he agreed to buy this abandoned service station in Breckenridge from the plaintiff for the

sum of $200. Plaintiff's representatives on the other hand testify that the defendant offered to pay $200 for this building, but that they informed the defendant that they had no authority to sell the building at all but would submit defendant's offer to the Chicago office of the plaintiff company; that the offer was so submitted and that permission to sell the building at this figure was refused; but that plaintiff's representatives were granted permission to rent the building to defendant for a year at a monthly rental of $5 per month; that this proposition was communicated to the defendant and accepted by him and that defendant thereupon was given permission to move the building from Breckenridge to Wahpeton. This testimony was contradicted by the defendant. As already stated, defendant testified that in the first conference there was a definite agreement whereby the plaintiff agreed to sell and the defendant agreed to purchase the building for $200. The defendant further testified that at a later date plaintiff's district superintendent Leonard came to defendant and made a further proposition that the plaintiff company would accept $60 for the building, payable in monthly payments of $5 per month, provided the defendant during a one-year period would handle Standard Oil products exclusively in his service station.

There is evidence on the part of the defendant tending to show that the building was in a dilapidated condition; that some of the windows had been broken; that stucco had cracked and a great deal thereof had fallen off, and in general, that the building was in an abandoned and dilapidated condition.

The undisputed evidence shows that the defendant moved the building from Breckenridge to Wahpeton at his own cost and expense; that the building had a concrete floor which could not be and was not moved; that in order to move the building over the bridge the roof had to be taken off; and that in the course of the moving a partition in the middle thereof was destroyed and that the roof also became practically, if not wholly, destroyed; that the stucco on the outside was greatly injured and a great portion thereof fell off; that the defendant, in order to use the building at all, was compelled to repair and. practically rebuild it; that he placed the same on a concrete foundation, with concrete driveways leading to and from the same; that the usual fixtures and equipment used in connection with a service station

were installed; that he constructed a new concrete floor, and new roof and made all necessary repairs; that the building was completely repaired and rebuilt and made a permanent part of the real property where it was so placed; that all of this was done with the express knowledge and acquiescence of the representatives of the plaintiff company.

It is undisputed that at the time the building was moved, repaired and placed upon the land belonging to the defendant no lease whatever had been executed; but some time after the building had been so repaired or rebuilt and after the defendant had commenced to operate his business therein, the district superintendent Leonard again called and presented to the defendant for execution a certain lease which recited that plaintiff had leased to the defendant, for a period of one year at a monthly rental of $5 per month, a certain building then situated on a certain described tract of land in Breckenridge, Minnesota and that the defendant had permission to move the same to Wahpeton, North Dakota. It is also undisputed that the defendant finally signed this lease; but there is a square conflict in the evidence as to what occurred at the time this lease was executed. Plaintiff's representative testifies that the defendant signed this instrument without objection and in evidence of the arrangement formerly made. Defendant on the contrary testifies positively that he refused to sign the lease when it was presented to him and stated that he had bought the building and was entitled to a bill of sale and not a lease; that thereupon plaintiff's representative stated to him, in effect, that this lease was taken merely to carry out the arrangement formerly made, namely, to provide for the payment by the defendant of $60 for the building, payable in monthly installments of $5.00 per month with the understanding that during the time these payments were made, to wit, during the period of one year, the defendant would handle Standard Oil products exclusively in his service station and that upon defendant's compliance with the arrangement so made at the end of the year so stipulated the building would become the property of the defendant.

On this appeal it is contended by the plaintiff: (1) that under the agreement between the parties as evidenced by the lease the building continued to be personalty and consequently is recoverable by the plaintiff in an action in claim and delivery; and (2) that the repre-

sentatives of the plaintiff had no authority to sell the building to the defendant; and (3) that the court erred in excluding certain evidence offered by the plaintiff tending to show that plaintiff's representatives had no authority from the plaintiff company to sell the building.

In our opinion the judgment is correct and must be affirmed. It is doubtless true that "the parties concerned may, by agreement in due form, give to fixtures the legal character of realty or personalty at their option, and the law will respect and enforce their understandings whenever the rights of third parties will not be prejudiced." Myrick v. Bill, 3 Dak. 284, 288, 17 N. W. 268. But this rule merely fixes the character of property as between the parties and does not authorize a person to recover property other than that which belongs to him. For instance, if a certain building is leased as personalty and the lessee wrecks the building and uses one board or shingle from the building so wrecked in the construction of each of a hundred new buildings, obviously, the lessor does not become entitled to recover all of these new buildings as his personal property. In the case at bar the plaintiff is seeking to recover not alone the property that it turned over to the defendant, but is seeking to recover a great deal additional property. It is seeking to recover a building, the greater value of which exists by reason of materials placed therein, and labor expended thereon, by the defendant. However, we deem it unnecessary to determine whether there has been such a destruction of substantial identity that it must be said that the building which the plaintiff is seeking to recover in this action is a building other than the one described in the lease. There is, we think, no reasonable room for doubt but that the district superintendent of the plaintiff company in the first instance sought out the defendant for the purpose of inducing him to take the abandoned Breckenridge Service Station building off plaintiff's hands, as well as to induce defendant to handle Standard Oil Company products in the service station which defendant was then about to install. We are, also, of the opinion that at the first conference had between the defendant and the two representatives of the plaintiff, nothing was said about a lease, but that the conversation had related to a purchase and sale alone, and that wholly without regard to whether the district superintendent had authority to sell the building, the defendant at the time he moved and repaired and rebuilt the

building and placed the same upon and as a permanent part of his own realty, did so in good faith in the belief that the building did in fact belong to him or would do so upon his making the stipulated payments. It certainly seems highly improbable that the defendant would have gone to the expense which he did—expending as the evidence shows some $560, in moving and rebuilding the building—if as a matter of fact he knew or believed that all the assurance he had was that he might have the use of the building for only one year at a monthly rental of $5 per month. We are all agreed that the more reasonable view of the facts is that the defendant moved, repaired and rebuilt the building and placed the same permanently as a part of his own real property in good faith in the belief that the building belonged to him. In other words, we are of the opinion that even though the district superintendent was not authorized to make a sale and though no valid contract of sale was made at all, that the defendant did in good faith believe that he had purchased the building and that he moved it, repaired it and made it a part of his realty in this belief; that he expended a great deal more on the building by way of material and labor than it was worth when he received it; and that it would greatly injure his real property to permit it to be removed at this time. And in these circumstances plaintiff should not be permitted to recover the building even though it never, in fact, parted with title; but the defendant should be permitted to retain it and make compensation for the value of the property which he received from the defendant. Wetherbee v. Green, 22 Mich. 311, 7 Am. Rep. 653.

But we are further of the opinion that the defendant was justified in believing that the district superintendent of the plaintiff company had authority to sell the building. In other words, we are of the opinion that the sale of this abandoned service station which was part of the property under the supervision of the district superintendent was within the apparent scope of authority of such district superintendent.

The judgment appealed from is affirmed.

Birdzell, Burke, Nuessle, and Johnson, JJ., concur.