## FREDERICK HARRISON *vs.* MINOR CLARK.

First Judicial District, Hartford, May Term, 1901.
ANDREWS, C. J. TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The plaintiff agreed with *W*, his creditor, that the latter might drive the plaintiff's horse to *Y's* stable, where it was to remain in *Y's* keeping until the plaintiff should pay *W* the amount of an overdue account. *W* drove the horse to *Y*, but fraudulently stated to him that he, *W*, had taken the horse in payment for a debt, and directed *Y* to sell it for what he thought it was worth. The following day *Y* sold the horse to the defendant who bought it in good faith and for value. *Held* that upon these facts the trial court was justified in refusing to find that there was an executed contract of pledge.

The trial court reached the conclusion, upon the foregoing facts, that the title to the horse was in the plaintiff and that he had the right of immediate possession. *Held* that this conclusion, whether treated as one of law or fact, was manifestly correct.

Where no fraud and no misleading acts upon the part of the owner of property are shown, his right to its immediate possession, as against a *bona fide* purchaser from a mere possessor, is well settled.

A defendant in replevin who pleads the general issue but files no disclaimer to the property, is estopped from contesting the detention alleged, and the plaintiff is not obliged to prove it.

The fact that the owner of property, which was sold without authority by a third person, does not demand it from the *bona fide* purchaser, nor inform him of his claim as owner, nor commence an action of replevin, until nine weeks after he first learned of the sale, is not, as matter of law, conclusive evidence of a ratification of the sale.

It is not error for the trial court in its judgment to drop the name of a person who, months after the commencement of the action, merely consented to become a defendant but was not made such by any action of the court.

A memorandum directing judgment to be entered may be amended and the judgment drawn up in accordance with the amended memorandum.

Argued May 7th—decided May 29th, 1901.

ACTION of replevin for the possession of a horse, brought to the Court of Common Pleas in Litchfield County and tried to the court, *Welch, J.*; facts found and judgment ren-

dered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

This is a statutory action. General Statutes, §§ 1323–1334. The writ directs the replevin of a horse of the value of $140. The declaration alleges: 1. The defendant has since April 1st, 1899, wrongfully detained and still wrongfully detains said horse, being the property of the plaintiff. 2. The plaintiff was on said day and ever since has been lawfully entitled to the immediate possession of the horse. Possession and damages for detention are claimed.

The plea is the " general issue," with notice that the defendant will prove that "The Bernheim Brothers," through its agent, Watson, bought the horse of the plaintiff, and placed it in possession of one Yale, who sold the same for $110 to the defendant, who bought it in good faith and without notice that the plaintiff claimed to be owner and entitled to possession thereof; and that defendant has had possession of said horse from the day of its purchase to the service of the writ, and the plaintiff has made no demand on him for possession.

It appears that the plaintiff was a retail liquor seller and owner of the horse. " The Bernheim Brothers " was a corporation doing a wholesale liquor business in Louisville, Kentucky, and had sold liquors to the plaintiff. Watson was its authorized agent.

Upon the trial the defendant claimed, and offered the testimony of Watson to prove, that on March 31st, 1899, the plaintiff sold the horse to The Bernheim Brothers, in full payment of a sum then due it and of certain whiskey subsequently shipped to the plaintiff.

The finding for appeal, as made by the trial court, states the following facts material to the decision: On March 31st, 1899, Watson, being the authorized agent of The Bernheim Brothers, called at the plaintiff's shop to collect of him or to secure the payment of the sum of $111.40 then due to The Bernheim Brothers for liquors plaintiff had purchased. The plaintiff was then financially embarrassed. Watson proposed to send some additional whiskey to the plaintiff if he would

allow him to drive his horse to the place of one Yale, and there leave it in the keeping and care of said Yale until the plaintiff should send to him (Watson) some money on the bill of The Bernheim Brothers, the expense to the plaintiff to be only what the feed of the horse should cost. This proposition was accepted by the plaintiff. Said Yale was a hotel-keeper, a regular customer of The Bernheim Brothers, and well known to both Watson and the plaintiff. It was an essential part of the contract, and explicitly understood, that the horse was to remain in the actual custody of Yale while out of the plaintiff's possession, and be held as a pledge for the payment of some money on The Bernheim Brothers' bill. Watson took the horse, with a wagon, harness, etc., belonging to and furnished by the plaintiff, and drove to Yale's hotel. Watson left the horse and other property of the plaintiff with Yale, informed him that he had taken the property in payment of a bill of The Bernheim Brothers, and instructed Yale to sell the property for what he considered it worth. The next day (April 1st, 1899) Yale sold the horse to the defendant, who paid him therefor $110. The defendant obtained possession of the horse as a *bona fide* purchaser for value, and without notice of any disability attaching to its sale to him; he knew that the plaintiff had been owner of the horse up to a short time before this sale, and the plaintiff had offered to sell the horse to the defendant for $150. The horse remained in the exclusive possession of the defendant, who used it as his own, from said April 1st until the service of the writ on June 22d, 1899. The sale and transfer to the defendant was entirely unauthorized by the plaintiff, and was a flagrant violation of the agreement between him and Watson. The plaintiff first learned of the sale to the defendant about ten days after it took place, but made no demand on the defendant for possession, and did not inform him of his claim to the horse until after the service of the writ on said June 22d. On April 7th, 1899, The Bernheim Brothers delivered to the plaintiff 20 gallons of whiskey of the value of $31.30. At the time of the service of the writ the plaintiff was indebted to The Bernheim Brothers in the sum of $142.70. The plain-

Harrison *v.* Clark.

tiff has never paid nor tendered to The Bernheim Brothers, nor to Watson, Yale, or the defendant, any portion of the amount due said The Bernheim Brothers, nor of the amount due for the feed of said horse, and has not tendered to the defendant the sum paid by him to Yale for the horse.

Upon these facts the court based this conclusion of fact: The title to the horse was in the plaintiff with the right to its immediate possession, and the defendant was not the owner of the horse.

The court made the following rulings on questions of law: The sale of the horse to the defendant was a conversion by Watson, acting through his agent, Yale, and the possession of the horse so acquired by the defendant was wrongful from the beginning. A demand on the defendant by the plaintiff previous to the service of the writ of replevin, was unnecessary. A tender to The Bernheim Brothers, or to Watson, Yale, or the defendant, of the amount of the defendant's indebtedness to The Bernheim Brothers, or of the cost of feeding the horse, as well as a tender to the defendant of the price he paid for the horse, was unnecessary before bringing this action. The purchase of the horse in good faith for value, and without notice of the transaction between the plaintiff and Watson, did not subrogate the defendant to all the rights that The Bernheim Brothers, or Watson, had in respect to said horse, its custody, and the lien thereon. The law does not make the fact that the plaintiff did not make demand on the defendant for the horse, nor inform him of his claim as owner, nor commence this action, until some nine weeks after he first heard of the sale to the defendant, conclusive evidence of a ratification of the sale.

The errors assigned in the appeal are that the court erred in reaching its conclusion of fact on the facts set forth in the finding, and erred in making its rulings on questions of law.

*Samuel A. Herman*, for the appellant (defendant).

*Wellington B. Smith* and *Frank B. Munn*, for the appellee (plaintiff).

HAMERSLEY, J. The defendant's argument is based upon the assumption that the trial court has found that the horse was delivered in pledge to The Bernheim Brothers. The court did not so find ; and the discussion in respect to the lien of a pledge, the necessity of a tender to The Bernheim Brothers before the plaintiff could take back his property pledged, and the subrogation of the defendant to the rights of the original pledgee, is irrelevant. The conclusion of the court in not finding a pledge may be fairly regarded as consistent with the facts found, notwithstanding the annoying and unnecessary want of clearness in the statement of these facts. Whatever the curious transaction found by the court may mean, it does not mean an executed contract of pledge. There may have been an agreement between the plaintiff and The Bernheim Brothers in respect to a future pledge, but that agreement was not carried out; it required the assent of Yale, and the contract of pledge was never made. It is not an unreasonable inference that the plaintiff did not surrender to Watson his possession of the horse, but that in driving the horse to Yale's hotel Watson acted as the plaintiff's servant or agent, with instruction to arrange with Yale some sort of a three-sided contract of pledge. In view of Watson's conduct, the legal effect of carrying out those instructions becomes immaterial. In fact the horse remained in the full possession of the plaintiff, certainly until Watson, fraudulently and without any authority, treated the horse as his own property, or the property of The Bernheim Brothers, and delivered it to Yale with directions to sell it. These considerations are sufficient to show that the refusal of the trial court to find the fact of an executed contract of pledge is not inconsistent with the facts actually found. Treating the appeal (as possibly for the purposes of this case it should be treated) as correctly assigning such refusal for error, we think the exception is not well taken. .

The conclusion of the trial court from the facts as found, that the plaintiff did and the defendant did not own the horse, and that the plaintiff was entitled to its immediate possession, is, as a conclusion of fact, plainly lawful and final. We do not understand this to be controverted, except on the

theory that the fact of a pledge has been or should have been found. In so far as it can be treated as a conclusion of law, its freedom from error is equally apparent. The right of the owner of property to its immediate possession, as against a *bona fide* purchaser from a mere possessor, where no fraud and no misleading acts on the part of the owner are shown, is well settled. *Baldwin* v. *Porter*, 12 Conn. 473, 482, 483; *Forbes* v. *Marsh*, 15 id. 384, 397; *Hart* v. *Carpenter*, 24 id. 427, 430; *Romeo* v. *Martucci*, 72 id. 504, 509.

The necessity of a demand upon the defendant by the plaintiff before the service of the writ of replevin, is a question not in issue. The defendant pleaded the general issue, and did not file a disclaimer of all right to the property. He is therefore estopped from contesting the fact of a detention, and the plaintiff is not obliged to prove it. General Statutes, § 1330; *McNamara* v. *Lyon*, 69 Conn. 447, 452.

The ruling as to ratification is correct. The facts found do not necessarily exclude any reasonable conclusion except the fact of ratification.

The other rulings, in the view we have taken of the case, do not affect the judgment.

It appears that after the action had been pending in court some six months, The Bernheim Brothers filed with the clerk of the court a paper to the effect that it consented to become a party defendant, and to this all the other parties consented. No action was then taken by the court. In the judgment it is ordered that The Bernheim Brothers be dropped from the action. We see no error in this.

It also appears that this case was tried during the January term, 1901, but not then decided. During the next term, on February 13th, the judge filed with the clerk a memorandum for entering up judgment, and seven days later amended the memorandum, and the judgment was then drawn up in accordance with the amended memorandum. There is no error in this.

There is no error in the judgment of the Court of Common Pleas.

In this opinion the other judges concurred.