ATLAS ASSURANCE COMPANY, LIMITED, *vs.* HARRY GIBBS ET ALS.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued January 8th—decided March 3d, 1936.

*Herman M. Levy* and *Leon F. Simmonds,* for the appellant (defendant Gibbs).

*Raymond J. Devlin,* for the appellant (defendant Park City Finance Company).

*Joseph B. Morse, Jr.,* for the appellee (plaintiff).

MALTBIE, C. J.   The defendant Gibbs purchased a used automobile from the Colonial Credit Company under a conditional bill of sale which the Credit Company assigned to the defendant Park City Finance Company.   Gibbs took possession of the car, made all payments due under the conditional bill of sale and was in possession of it when this action of replevin was brought.   The engine in the car came from a Packard automobile owned by John Grier Hibben, which had been involved in a collision and sold by the executors of his estate.   Ownership of this car passed to several persons by purchase and sale until it was bought by John Higgins.   While the car was in his possession he also acquired another Packard car which had been stolen from Mr. and Mrs. Sherline and the title to which had been assigned by them to the plaintiff, it having paid to them the amount due under an insurance policy which covered the loss of the car by theft.   After Higgins came into possession

of the two cars, the engine from the Hibben automobile was placed in the Sherline car and the resulting composite was then sold to the Colonial Credit Company. It thus appears that legal ownership of the engine in the car in Gibbs possession was in him and the Finance Company, unless lost under the rule of law advanced by the plaintiff which we shall later discuss, whereas legal ownership of the rest of the automobile was in the plaintiff. The plaintiff did not demand possession of the car before bringing the action.

The plaintiff contends that the engine in the car became so much an integral part of it that under the doctrine of accession replevin lay for the whole car. In these days when the various parts of an automobile are easily removed and replaced, or interchanged, often without materially affecting the structure of the car, that doctrine has its obvious limitations. Indeed, it easily lends itself to a *reductio ad absurdum*. Suppose a thief has stolen three automobiles of the same make and he constructs a car by taking the chassis from one, the engine from another and the body from the third; which of the owners of the stolen automobiles in such a case could claim the reconstructed car? In *Tire Shop* v. *Peat*, 115 Conn. 187, 161 Atl. 96, we held that tires and tubes added to a car did not become a part of it by accession. We said (p. 192): "The doctrine of title by accession does not apply to the equipment of a car which the buyer and seller do not intend to be merged into its structure and which is clearly distinguishable, and as readily detachable from it as are tires and tubes." Parts of a car may no doubt be so built into it that they cannot be detached without materially affecting the structure of the remaining portion or be so merged into that structure that they have lost their identity; and the parts added

may be so incidental in function or value that they should not be regarded as distinct from the whole. See *Wetherbee* v. *Green,* 22 Mich. 311, 320; 1 R. C. L. p. 124.

In this case the trial court has found that the engine was taken out of the Sherline car and replaced with the engine from the Hibben car without any damage to the body or chassis of the former; and it is clear that the engine could now be taken out of the reconstructed car without damage to the body or the chassis. Of course the engine had very substantial value as compared to the value of the whole car. In *Clark* v. *Wells,* 45 Vt. 4, which was trover for the running part of a wagon, the court held that new wheels and axles substituted for the old did not become a part of it by accession. It said (p. 7): "We think the ordinary repairs upon a personal chattel, such as making new bolts, nuts, thills, and the like, become accretions to, and merge in, the principal thing, and become the property of the general owner. But in this case, the wheels and axles constitute the running part of the wagon. They could be followed, identified, severed without detriment to the wagon, and appropriated to other use without loss. The plaintiff was the owner, and never parted with the property." So, in this case, unless the fact that the engine was placed on the chassis of a stolen car affects the situation, the plaintiff, while entitled to the possession of the body and chassis, had no right to the engine. *Franklin Service Stations, Inc.* v. *Sterling Motor Truck Co.,* 50 R. I. 336, 339, 147 Atl. 754; *Bousquet* v. *Mack Motor Truck Co.,* 269 Mass. 200, 201, 168 N. E. 800; *Hallman* v. *Dothan Foundry Machine Co.,* 17 Ala. App. 152, 82 So. 642; *Lincoln Road Equipment Co.* v. *Bolton,* 127 Neb. 224, 254 N. W. 884.

In *Bozeman Mortuary Asso.* v. *Fairchild,* 253 Ky.

74, 68 S. W. (2d) 756, it was held that one in possession of stolen property could have no rights superior to those of the thief, and in a situation somewhat similar to the one before us that, as a thief could not claim title to parts added by him to the automobile he had stolen as against its owner, neither could one who had acquired it innocently and in good faith. That one in possession of stolen property may not ordinarily assert any claim to it as against the owner is of course true, but it seems to us a *non sequitur* to extend that principle so far as to say that where he has acted in good faith he can assert no greater claim to parts added to it which he in fact owns than he could if he were the thief. Nor would such a conclusion accord with the analogies of the law. In *Wetherbee* v. *Green,* supra, Cooley, J., in an opinion holding that an owner of land on which another had cut timber of the value of $25, without right but acting in good faith under a mistake, could not replevy hoops of the value of $700 into which that other had converted the timber, discusses with his customary learning the rights of one who innocently adds value to the property of another in several of the aspects in which that question presents itself; he points out certain distinctions between the civil and the common law; and he then says (p. 317): "But we are not called upon in this case to express any opinion regarding the rule applicable in the case of a willful trespasser, since the authorities agree in holding, that when the wrong had been involuntary, the owner of the original materials is precluded, by the civil law and common law alike, from following and reclaiming the property after it has undergone a transformation which converts it into an article substantially different." In a somewhat later case, Cooley, J., says of this rule: "This is a thoroughly equitable doctrine, and its aim is so to adjust

the rights of the parties as to save both, if possible, or as nearly as possible, from any loss." *Isle Royale Mining Co.* v. *Hertin,* 37 Mich. 332, 336.

*Silsbury* v. *McCoon,* 3 N. Y. 378, is a case more nearly in point. The action was in trover for the conversion of certain whiskey which the defendant claimed had been made by the plaintiff from corn which had been unlawfully taken from a third person. In course of the opinion Ruggles, J., after stating the general principle that an owner of stolen property may reclaim it from one innocently in possession of it, said that common and civil law agree (p. 385) "that if the chattel wrongfully taken, afterward come into the hands of an innocent holder who believing himself to be the owner, converts the chattel into a thing of different species so that its identity is destroyed, the original owner cannot reclaim it." After quoting this statement in *Hyde* v. *Cookson,* 21 Barb. (N. Y.) 92, 105, the court added: "This distinction between a willful and an involuntary wrongdoer, runs through the authorities, and stands upon the principle that a party can obtain no right by his own wrong." See *Eaton* v. *Langley,* 65 Ark. 448, 47 S. W. 123. The case for the defendant in the situation before us is far stronger than was involved in the decisions to which we have referred. If, as appears here, the engine can be readily detached from the car without damage to the rest of it, to permit the plaintiff to take the engine which lawfully belongs to the defendant would be to impose an unjust loss upon the latter and give to the former an enhancement of value to which he is not entitled. The fact that the rest of the car came into the possession of the defendant as stolen property is no sound reason why he should lose the engine which is his of right.

This conclusion has a material bearing upon the

defendants' claim that the plaintiff had no right to maintain this action without first making a demand for the delivery of the car. Demand and refusal are sometimes a prerequisite to the maintenance of an action of conversion. In general they constitute the proper evidence of a conversion where one has come rightfully into the possession of goods but are not necessary in case of a wrongful taking or a wrongful use of personal property, or of a wrongful exercise of dominion over it. *Coleman* v. *Francis,* 102 Conn. 612, 129 Atl. 718; *Molski* v. *Bendza,* 116 Conn. 710, 711, 164 Atl. 387. While the situation arising where stolen property is purchased in good faith from one who is the apparent owner, in the belief that the seller has a good title which he can convey, does not fall strictly within the former category, the courts in a number of jurisdictions, including our own, hold that as regards an action for conversion demand and refusal before suit must be shown; *Parker* v. *Middlebrook,* 24 Conn. 207; *Coleman* v. *Francis,* supra, p. 617; 65 C. J. 16; and the same rule applies in replevin. *Lynch* v. *Beecher,* 38 Conn. 490, 494. The reason is tersely stated in *Gillet* v. *Roberts,* 57 N. Y. 28, 34: "The rule is a reasonable and just one, that an innocent purchaser of personal property from a wrongdoer shall first be informed of the defect in his title, and have an opportunity to deliver the property to the true owner, before he shall be made liable as a tort feasor for a wrongful conversion." See also *Employers' Fire Ins. Co.* v. *Cotten,* 245 N. Y. 102, 104, 156 N. E. 629.

Whatever limitations there may be in the application of the rule, such a case as the one before us falls peculiarly within it. Demand implies a reasonable opportunity voluntarily to comply with it. The defendants were under a duty to surrender all of the car except the engine. They were entitled to have demand

made upon them before action brought that they might have the opportunity to remove the engine which they had the right to retain, and surrender the rest of the car. However, the making of a demand where the property in question has been stolen is not an element in the owner's cause of action to recover it but it is a protection which the law grants to the person in innocent possession of it. Hence the plaintiff in such case need not allege demand nor does the filing of a general denial, as was done in this case, raise the issue. See *Harrison* v. *Clark*, 74 Conn. 18, 23, 49 Atl. 186.

There is error, the judgment is set aside and the case remanded to be proceeded with according to law.

In this opinion the other judges concurred.