694 P.2d 246

**BANK OF AMERICA, a corporation, Plaintiff/Appellant/Cross-Appellee,**

v.

**J. & S. AUTO REPAIRS, James J. Lohmeier and Sharon Lohmeier, Defendants/Appellees/Cross-Appellants.**

**No. 17518–PR.**

Supreme Court of Arizona,
In Banc.

Jan. 16, 1985.

Leighton H. Rockafellow, Tucson, for plaintiff/appellant/cross-appellee.

Ronald W. Sommer, Tucson, for defendants/appellees/cross-appellants.

GORDON, Vice Chief Justice:

This petition for review arises out of a replevin action commenced by Bank of America to recover a 1977 Plymouth Voyager Van, upon which it held a purchase money lien. J. & S. Auto Repairs and the owner and operator thereof, James L. Loh-

meier, had filed a counterclaim against the bank seeking $4,400 for repair to the van claiming the bank was unjustly enriched in that amount.

The relevant factual and procedural background of this case follows. Bank of America entered into a conditional sales agreement with Thomas H. Duncan on June 8, 1977 for the purchase of a Voyager Van with a lien in favor of Bank of America (hereinafter referred to as the "bank"). On August 15, 1978, Duncan had the van towed to defendant, J. & S. Auto Repairs (hereinafter referred to as "J & S") for repairs. The van had been involved in a fire, which destroyed the engine, transmission, and other parts of the van. Duncan instructed J & S to dismantle the van to make a repair estimate, but neither Duncan nor the bank gave J & S authority to repair or store the van. Duncan later disappeared. To ascertain Duncan's wishes regarding the van, J & S unsuccessfully attempted to reach Duncan by phone and by certified mail. Following these futile attempts to contact Duncan, J & S contacted Betty's Title Service in mid-December to perform a title search on the van.

In the van J & S found a copy of the conditional sales contract and a California Highway Department slip, neither of which revealed the bank's lien on the van. J & S gave these documents to Betty's Title Service. Some time in January or February, 1979, Betty's Title Service came up with a motor vehicle division preliminary inspection report stating that there were no liens on the van and that it was not stolen. At that time J & S determined that the van had been abandoned. Consequently, Lohmeier decided that he owned the van, and he applied for a bonded title.

After the bonded title application was sent in, J & S "proceeded to build the vehicle." [1] When the repairs were finished, J & S still had no title to the van. J & S, therefore, contacted Betty's Title Service who contacted the Motor Vehicle Depart-

ment and discovered that a lien actually existed on the van. On April 19, 1979, J & S received notification of the lien in favor of the bank. The bank commenced a replevin action demanding the return of the van in its repaired condition.[2] On May 21, 1979, Lohmeier delivered the van to the bank without prejudice to his rights for the repair work, parts, and materials that were attached in good faith to the van and without prejudice to any claims for unjust enrichment.

The trial court awarded possession of the van to the bank and $3,000 in unjust enrichment damages to J & S. Both parties appealed. The Court of Appeals, 143 Ariz. 447, 694 P.2d 277, finding that J & S had no security interest in the van and that it was not entitled to restitution, reversed the judgment of the trial court and remanded with directions to enter judgment for the bank.

We agree with the Court of Appeals' statutory analysis of A.R.S. §§ 33–1022 and 44–3135 that J & S and Lohmeier had no security interest in the van, and approve that part of the opinion. We disagree, however, with its discussion on unjust enrichment and the Restatement of Restitution, and thus vacate that portion of the opinion. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Ariz.R.Civ. App.P. 23.

The Court of Appeals relied on the Restatement of Restitution §§ 2 and 112 (1937) in concluding that J & S was not entitled to restitution. We do not feel, however, that these sections control the resolution of the restitutionary remedy in this case. Instead we believe that two other sections, namely § 42 and § 39 do.

Section 42(2) governs J & S's ability to recover the value of its repair work and the enhanced value of the van that resulted from its labor. Section 42(2) reads:

---

1. Parts replaced on the van included, among others, the engine, transmission and tires.

2. Duncan had defaulted on the conditional sales agreement on October 9, 1978, and the bank charged off the loan.

"*A person who, in the mistaken belief that he* or a third person on whose account he acts *is the owner,* adds value to the chattels of another, is not thereby entitled to restitution from the owner *for the value of his services or the increased value given to the chattels;* but if the owner brings an action for their conversion the added value or the value of the services, whichever is least, is deducted from the damages." (emphasis added)

In the absence of contrary authority Arizona courts follow the Restatement of the Law. *MacNeil v. Perkins,* 84 Ariz. 74, 324 P.2d 211 (1958); *Fendler v. Phoenix Newspapers, Inc.,* 130 Ariz. 475, 636 P.2d 1257 (App.1981); *Barnum v. Rural Fire Protection Co.,* 24 Ariz.App. 233, 537 P.2d 618 (1975).

The Restatement section suggests that the duty to compensate is determined by the remedy employed by the owner of the chattel. If replevin is sought, there is no duty to compensate; if conversion is claimed, a duty to compensate arises for the value of services or enhancement value in the form of a reduction of damages available to the owner. The comment to 42(2) of the Restatement of Restitution likewise suggests this result:

"Comment on Subsection (2):

"d. The position of the one improving chattels is made less difficult because of the fact that ordinarily he has taken possession of them and the owner of the chattel is not in a position to get them back in specie. The owner's redress is usually either by an action for conversion or an action of replevin. In the action for conversion the damages as against an innocent improver are reduced by the value of the improver's labor and materials; in the action of replevin the possessor can ordinarily defeat recovery by giving a bond, the damages being the same as in an action for conversion (see § 154)."

■ In our case, the bank brought an action in replevin, but J & S did not defeat specific recovery by giving a bond. There-fore, following the Restatement, J & S is precluded from recovering the value of its services or labor and the increased value of the van. See *United States Fidelity & Guaranty Co. v. Marshall,* 4 Kan.App.2d 9, 601 P.2d 1169 (1979), which interprets § 42(2) similarly.

■ J & S may be entitled, however, to collect the parts or the value of the parts installed in the van. The Restatement of Restitution § 42(2) precluded recovery of the "value of his services or the increased value". This language and the rationale behind § 42(2) do not necessarily encompass detachable parts put into a chattel that could be removed without damage to the chattel. The Restatement reasons that although it is harsh on the one making improvements by mistake, § 42(2) precludes restitution because "it would be still more harsh to require the one receiving the benefits to pay" for the improvements. Restatement of Restitution, § 42(2), comment a. Merely allowing the improver to remove his parts, however, does not frustrate this rationale as it does not impose costs on the owner. Furthermore, assuming the parts can be removed from the chattel without damaging it, allowing such removal leaves the owner with the chattel in the same condition it was before the improvements were made. If the owner refused to allow the improver to remove his parts at his expense, the improver should be allowed to recover the value of the parts.

Restatement of Restitution § 39 supports this conclusion. This section states:

"§ 39. TRANSFER OF LAND, CHATTELS OR CHOSES IN ACTION.

"Except as stated in §§ 41 and 42, a person is entitled to restitution from another because of mistake of fact if he has transferred to the other land, chattels, negotiable instruments or choses in action under such circumstances that, had he paid money to the other, he would have been entitled to restitution."

Comment d. of this section and the accompanying illustrations explain how this sec-

tion applies to chattels incorporated into another chattel:

"d. *Incorporation into the land or chattels of another.* Where chattels are, by the act of the owner, made a part of the land or chattels of another so that they cannot be profitably severed, there can be no specific restitution and the resulting legal consequences are the same as if the owner of the chattel had rendered beneficial services to the other or had made improvements upon the other's lands or chattels; hence the rules stated in §§ 41 and 42 are applicable. *This rule is reached, however, only where the chattels are incorporated.* Where there is merely a delivery to the land of another without incorporation, the ordinary rules as to the transfer of chattels are applicable. Whether or not a chattel is so incorporated into another chattel or into land as to become a part of it is not within the scope of the Restatement of this Subject.

"*Illustrations:*

"18. In the mistaken belief that he owns Blackacre and without the knowledge of the owner, A builds thereon a stone garage, embedding it in the earth in such a manner that it becomes a part thereof. In the absence of a statute giving relief, A is not entitled to restitution from B, the owner of Blackacre, either for the value of the materials used or for the value added to Blackacre, except as stated in § 42.

"19. Same facts as in illustration 18, except that the garage is portable and not made part of the land. A is entitled to the garage and upon B's refusal to permit its removal, A is entitled to an action for restitution, upon compensating B for any harm done to the land." (Emphasis added)

As explained in comment d., specific restitution of a chattel is prohibited if the chattel is incorporated into another chattel such that it cannot be severed from the chattel, thus following Restatement of Restitution § 42. Comment d. makes clear, however, that § 42 applies only if the chattel is incorporated; if removal of the chattel is possible, specific restitution is allowed, or alternatively the value of the chattel added.[3]

In this case the record indicates that the motor and other parts added to the van can be removed without damage to the vehicle. The record also shows that J & S made the repairs under the mistaken belief that it owned the van. J & S did not commence repairs until after Betty's Title Service provided it with the motor vehicle division preliminary inspection report stating there were no liens on the van and Lohmeier determined that he owned the van. Thus, J & S has a viable restitutionary remedy for the detachable parts. Before it can be concluded that J & S can recover these parts or their value, however, we must determine whether J & S is still the owner of these parts or if ownership of the parts passed to the bank under the doctrine of accession.

Accession is one means of acquiring title to personal property. The Court of Appeals' opinion did not discuss this issue directly. The trial court and the Court of Appeals assumed that title to the parts put into the van passed to the bank by acces-

---

**3.** Comment e. explains that the remedies available are either specific restitution or, if the transferee is unable to return the chattel, the owner of the chattel can recover the value of the property. Comment e. reads in its entirety:

"e. *The remedy.* If the transferee still retains the subject matter, he normally can avoid further liability by making specific restitution, unless he has been fraudulent. *If the transferee refuses or is unable to do this or was fraudulent, the transferor is entitled to maintain an action at law for the value of the thing transferred,* except that an action at law cannot be maintained for the value of land the title to which has been transferred because of a mistake and which is improperly retained. In many cases, the appropriate remedy is by a bill for reformation or for rescission. One of these equitable remedies is ordinarily used when a conveyance is made which does not carry out the agreement of the parties or, in case of a gratuitous transfer, does not carry out the intent of the grantor. The remedies which are available and the amount of recovery are stated generally in §§ 4 and 150–159." (Emphasis added)

sion. This conclusion is incorrect in Arizona.

In analyzing accession, two issues must be considered, both of which are issues of first impression in Arizona:

(1) whether an after-acquired accessions clause in a conditional sales contract *ipso facto* makes the motor and other added parts property of the seller, and if not

(2) whether the detachable parts added were indeed accessions.

■ On the first issue, the conditional sales agreement contained an after-acquired accessories clause as follows:

> "All parts, accessories, and equipment hereafter attached to said personal property shall become a component part thereof and shall belong to Seller and be subject to the terms hereof. No loss, damage to, or destruction of the personal property shall relieve Purchaser from his obligations hereunder."

The general rule holds that detachable parts added to an automobile do not become accessions to the automobile sold under a lien instrument containing an after-acquired accessory clause if the seller of the parts retains title to the parts by a conditional sales agreement. Because the mortgagor of the vehicle does not own the parts, the parts never become subject to the after-acquired accessory clause. While the conditional buyer and seller of a vehicle can make an agreement between themselves, they cannot bind third persons not parties to the agreement. *See Peoples Loan and Investment Co. v. Whittle*, 205 Ark. 35, 166 S.W.2d 1013 (1942); *Goodrich Silvertown Stores v. A. & A. Credit System*, 200 Minn. 265, 274 N.W. 172 (1937); *Tire Shop v. Peat*, 115 Conn. 187, 161 A. 96 (1932), and other cases cited in Annot. 43 A.L.R.2d 813, 817, § 2(b) (after-acquired accessory clause in vehicle sales instrument). In our case, J & S did not give title of the parts installed in the van to either Duncan or the bank. Since the mortgagor-Duncan never had title to the motor or other parts installed in the van, these items were not controlled by the bank's after-acquired accessory clause.

■ On the second issue, we must determine whether the motor and other detachable parts were accessions. The latest Arizona case that discusses accession as applied to motor vehicle parts is *Pacific Finance Corp. of California v. Morrow*, 76 Ariz. 207, 262 P.2d 247 (1953). Although the court in *Pacific* did not directly take a position on whether detachable parts added to an automobile were accessions, the Supreme Court did impliedly adopt a rule relating to accessions.[4] *Pacific* cites with approval *Atlas Assurance Co. v. Gibbs*, 121 Conn. 188, 183 A. 690 (1936), which discusses the application of accession to an engine installed in a truck. In holding that an engine which was readily detachable without damage to the automobile was not an accession, the court in *Atlas* stated:

4. In *Pacific*, defendant installed a motor in a car upon the written authorization of the conditional vendee of the vehicle. The conditional vendee defaulted and the mortgagee brought an action to replevy the car. Before the replevin action was commenced, defendant removed the motor from the car. Ultimately, the case was tried upon a conversion theory. The Court concluded that:

> "Defendant's acts after default of the vendee but before demand for repossession was made, were not inconsistent with or in denial of, the security interest of plaintiff. Installation of the motor was made upon express agreement it should be paid for immediately, and possession was retained by defendant for the very purpose of preventing any property rights therein from vesting in the vendee or conditional vendor. We think in these singular circumstances the doctrine of accession does not apply to give the conditional vendor greater rights in the motor than those of the repairman. For further discussions, see *Atlas Assurance Co. v. Gibbs*, 121 Conn. 188, 183 A. 690."

76 Ariz. at 211, 262 P.2d at 249.

In reaching its conclusion that accession did not apply, the court did not discuss the general rules of accession (whether the parts are removable without injury to the chattel). Instead the court limited its holding to a singular factual context in which an express agreement was made for immediate payment and the repairman retained possession of the vehicle to assure payment. Thus, the court did not directly take a position on whether a motor in general becomes an accession when placed in an automobile.

"The plaintiff contends that the engine in the car became so much an integral part of it that under the doctrine of accession replevin lay for the whole car. *In these days when the various parts of an automobile are easily removed and replaced, or interchanged, often without materially affecting the structure of the car, that doctrine has its obvious limitations.* Indeed, it easily lends itself to a reductio ad absurdum. Suppose a thief has stolen three automobiles of the same make and he constructs a car by taking the chassis from one, the engine from another, and the body from the third; which of the owners of the stolen automobiles in such a case could claim the reconstructed car? In *Tire Shop v. Peat*, 115 Conn. 187, 161 A. 96, we held that tires and tubes added to a car did not become a part of it by accession. We said (115 Conn. 187, at 192, 161 A. 96, 97): 'The doctrine of title by accession does not apply to the equipment of a car which the buyer and seller do not intend to be merged into its structure and which is clearly distinguishable, and as readily detachable from it as are tires and tubes.' Parts of a car may no doubt be so built into it that they cannot be detached without materially affecting the structure of the remaining portion or be so merged into that structure that they have lost their identity; and the parts added may be so incidental in function or value that they should not be regarded as distinct from the whole. See *Wetherbee v. Green*, 22 Mich. 311, 320, 7 Am. Rep. 653; 1 R.C.L. p. 124.

"*In this case the trial court has found that the engine was taken out of the Sherline car and replaced with the engine from the Hibben car without any damage to the body or chassis of the former; and it is clear that the engine could now be taken out of the reconstructed car without damage to the body or the chassis.* Of course the engine had very substantial value as compared to the value of the whole car. In *Clark v. Wells*, 45 Vt. 4, 12 Am.Rep. 187, which was trover for the running part of a wagon, the court held that new wheels and axles substituted for the old did not become a part of it by accession. It said (45 Vt. 4, at page 7, 12 Am.Rep. 187): 'We think the ordinary repairs upon a personal chattel, such as making new bolts, nuts, thills, and the like, become accretions to, and merge in, the principal thing, and become the property of the general owner. But in this case, the wheels and axles constitute the running part of the wagon. They could be followed, identified, severed without detriment to the wagon, and appropriated to other use without loss. The plaintiff was the owner, and never parted with the property.' So, in this case, unless the fact that the engine was placed on the chassis of a stolen car affects the situation, the plaintiff, while entitled to the possession of the body and chassis, had no right to the engine. *Franklin Service Stations, Inc. v. Sterling Motor Truck Co.*, 50 R.I. 336, 339, 147 A. 754; *Bousquet v. Mack Motor Truck Co.*, 269 Mass. 200, 201, 168 N.E. 800; *Hallman v. Dothan Foundry & Machine Co.*, 17 Ala.App. 152, 82 So. 642; *Lincoln Road Equipment Co. v. Bolton*, 127 Neb. 224, 254 N.W. 884."

121 Conn. at 191, 183 A. at 691. (emphasis added) The basic rationale behind *Atlas* is that accession does not apply because the parts were removable without damaging the vehicle. *But see Valley Chevrolet Co. v. O.S. Stapley Co.*, 50 Ariz. 417, 72 P.2d 945 (1937) (trailer attached to a truck became an accession).[5]

Courts in other jurisdictions have similarly held that detachable motor parts do not pass by accession to the conditional vendee. *See Clarke v. Johnson*, 43 Nev. 359, 187 P. 510 (1920) (tires, connecting rod bearings and a clutch facing) *Lincoln Road Equipment Co. v. Bolton*, 127 Neb. 224, 254 N.W. 884 (1934) (gasoline engine power unit); *Havas Used Cars, Inc. v. Lundy*, 70 Nev. 539, 276 P.2d 727 (1954) (engine). Ad-

---

5. To the extent that *Valley Chevrolet* is inconsistent with the opinion herein, we overrule it.

ditionally, numerous cases have held that tires and tubes placed on a vehicle are not accessions. *See* Annot. 43 A.L.R.2d 813, 821 § 5.

In *Havas*, the court followed the *Atlas* rule relating to detachability and damage to the automobile stating:

"Under the trial court's finding of the retention of title to the engine by the defendant and the ready removability of the engine without damage to the car, neither of which findings is questioned, we are led to the conclusion, under *Clarke v. Johnson*, supra, that the engine did not become an accession. The distinction between the installation of a new set of tires and the installation of a new engine is, after all, one of degree only. The car could no more be operated without tires than it could without an engine. Each case in which the doctrine of accession is advanced must be decided on its own facts."

70 Nev. at 542, 276 P.2d at 728.

Other jurisdictions have taken the opposite position and held that an engine and other engine parts are accessions. *Lincoln Bank & Trust Co. v. Netter*, 253 S.W.2d 260 (Ky.1952); *Allied Investment Co. v. Shaneyfelt*, 161 Neb. 840, 74 N.W.2d 723 (1956). The cases, however, rely on a different rationale relating to the "usefulness" of the vehicle without the motor or other parts.

*Lincoln Bank* reasoned that:

"The removal of the accessories from the vehicle in this case would destroy the machine's usefulness. These accessories were united to the machine so as to become, under the doctrine of accession, an integral part thereof. *Bozeman Mortuary Association v. Fairchild*, 253 Ky. 74, 68 S.W.2d 756, 92 A.L.R. 419 [ (1934) ]; *Black Motor Co. v. Foure*, 266 Ky. 431, 99 S.W.2d 177 [ (1936) ]; *American Loan Co. v. See*, 298 Ky. 180, 182 S.W.2d 644 [ (1944) ]; *Riggs Motor Co. v. Archer*, Ky., 240 S.W.2d 75 [ (1951) ]."

253 S.W.2d at 261. Similarly the court in *Allied Investment* relied on the "usefulness" rationale:

"It cannot be logically argued that a motor in an automobile can be identified and severed or removed therefrom without material injury to the automobile. The motor is in fact a vital, integral part, the very life and substance of an automobile. An automobile chassis and body without a motor is not an automobile. The one is ordinarily as indispensable as the others. An automobile is used for transportation, and without a motor it can serve no useful purpose. In that regard, defendants have cited no authority directly in point to support their contention. There is some confusion in cases, involving other accessories or parts placed or replaced upon automobiles and other machinery, but the authorities relied upon by defendants are clearly distinguishable from the case at bar upon the facts and applicable law."

161 Neb. at 847–48, 74 N.W.2d at 727.

We believe that the cases such as *Atlas* and *Havas* holding that detachable parts are not accessions are better reasoned and provide a more equitable result than *Lincoln Bank* and *Allied Investment* by preventing a complete windfall to the chattel owner. The doctrine of accession stems from the equitable notion that an owner of a chattel is entitled to his chattel in the same or improved condition after it has been tampered with by an innocent trespasser. The principle was not designed or intended to give the owner of the chattel more than he had to start with, but it was intended to assure he would not obtain his chattel in a condition of less value or usefulness than before it was changed by a third party. Thus, if the chattel was improved or enhanced and the improvements could not be severed from the chattel without injury to it, the improvements passed to the owner.

Mass production of automobiles, however, has resulted in standardization of equipment, allowing for additional and ready removal of many parts without damage to the automobile. After repair one can remove parts leaving the vehicle in the same condition as before the repairs.

Thus, where a motor and parts can be removed and the garageman offers to remove the parts, he should be entitled to either the parts, with removal performed at his expense, or the value of the parts. We hold that if they can be removed without damaging the vehicle, detachable parts added to a motor vehicle are not accessions. Whether certain parts can be removed without damage or injury to a vehicle is a factual question that must be determined in each case.

In the instant case, there was evidence that removal of the engine and other parts would not have damaged the van. The Court of Appeals stated that:

"removing the new parts would not have affected in any manner the uses to which the vehicle could be put at the time of its original delivery of J & S auto (except that it would have been easier for someone else to make repairs.)"

However, we will leave this determination to the trial court. We remand for a new trial to determine whether the engine and other parts installed by J & S into the van could be removed without injury. If items can be so removed, the court should determine the value of these parts. The opinion of the Court of Appeals is approved in part and vacated in part.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.