NO.   95-503

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996


PACCAR FINANCIAL CORP.,
a Washington corporation,

    Plaintiff and Appellant,

    v.

LES SCHWAB TIRE CENTERS OF
MONTANA, INC., a Montana
corporation, and INSURANCE
COMPANY OF NORTH AMERICA,

    Defendants and Respondents.

FILED

JUL 23 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:    District Court of the Fourth Judicial District,
    In and for the County of Missoula,
    The Honorable Ed McLean, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

    Patrick G. Frank, Worden, Thane & Haines, Missoula,
    Montana

    For Respondent:

    John R. Velk, Blakley & Velk, Missoula, Montana


Submitted on Briefs:  February 15, 1996

Decided: July 23, 1996

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Paccar Financial Corporation (Paccar) brought this action against Les Schwab Tire Centers of Montana (Les Schwab) and Insurance Company of North America (ICNA) to recover damages for the repossession of tires affixed to semi-trucks and trailers owned by Paccar and leased to MPT Corporation and/or Arthur and Dena Pamin (MPT). The District Court for the Fourth Judicial District, Missoula County, granted Les Schwab's and ICNA's Motion for Summary Judgment as well as their Motion for Rule 54(b) Certification to this Court. We affirm.

The following issues are presented for review:

1. Whether the District Court erred in determining that Paccar had no interest in the tires purchased by MPT from Les Schwab.

2. Whether the District Court erred in granting summary judgment to ICNA because Paccar was not a named party to the surety bond and did not have an insurable interest in the tires.

3. Whether the District Court erred in determining that there were no genuine issues of material fact.

### Factual and Procedural Background

From late 1987 through early 1989, Paccar entered into several agreements with MPT over the lease of eighteen semi-trucks. To protect its interest in the leased trucks, Paccar filed a financing statement with the Secretary of State on May 17, 1989.

From December 11, 1990, through October 5, 1991, MPT purchased 123 tires and related equipment from Les Schwab for mounting onto

2

the eighteen trucks leased through Paccar as well as several trucks owned by MPT. On July 23, 1991, MPT executed a continuing security agreement with Les Schwab setting forth the commercial and credit terms under which MPT could have an on-going business relationship with Les Schwab for the purpose of purchasing, on credit, goods and services for use in its trucking business. Les Schwab did not perfect its lien on the tires until August 5, 1991.

When MPT failed to pay for the tires, Les Schwab brought an action in the District Court to repossess them. The court found that Les Schwab had made a prima facie showing of its right to possession and ordered the sheriff to seize the tires. Les Schwab asked ICNA to issue a bond wherein ICNA agreed to indemnify and pay all costs to the Defendants "in the event that the attachment or taking of property of Defendant(s) is found to be wrongful."

Paccar filed a motion to intervene in the case on August 8, 1992, but before the court could rule on the motion, Les Schwab and MPT entered into a settlement agreement and the case was dismissed. Paccar instituted the present action on November 17, 1992, alleging a claim of conversion against Les Schwab for the repossession of the tires and naming ICNA as a party because of the bond.

On September 9, 1994, Les Schwab and ICNA filed a Motion for Summary Judgment in this action. The District Court granted the motion on March 14, 1995. Upon motion by Les Schwab and ICNA and without objection by Paccar, the District Court certified, pursuant to Rule 54(b), M.R.Civ.P., that its order granting summary judgment is a final order and judgment.

3

Standard of Review

Our standard of review in appeals from summary judgment rulings is *de novo*. Mead v. M.S.B., Inc. (1994), 264 Mont. 465, *470, 872* P.2d 782, 785. When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. Bruner v. Yellowstone County (1995), *272* Mont. 261, 264, 900 P.2d 901, 903. In Bruner, we set forth our inquiry as follows:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

Bruner, 900 P.2d at 903 (citations omitted).

Issue 1.

Whether the District Court erred in determining that Paccar had no interest in the tires purchased by MPT from Les Schwab.

Paccar contends that under its lease agreement with MPT, the tires became the property of Paccar when they were installed on the trucks leased by MPT. Paccar's lease agreements with MPT provide in part:

> [MPT] shall furnish, at its own expense, all necessary fuel, lubricants, grease, antifreeze, tires, tubes and all other replacement parts and supplies necessary for maintenance and lawful operation of the Equipment. . . . All parts installed and any modifications and alterations made in the course of the ordinary maintenance and repair of the Equipment shall become the property of [Paccar] and shall remain the property of [Paccar] upon termination of this Agreement unless otherwise provided herein.

4

The threshold issue then is whether the tires became so affixed to the trucks leased by MPT that they became "accessions." The District Court found that the tires were not accessions under the common law because they did not become an integral part of the trucks and remained independently identifiable and capable of being removed without harm or damage to the trucks.

> The doctrine of accession stems from the equitable notion that an owner of a chattel is entitled to his chattel in the same or improved condition after it has been tampered with by an innocent trespasser. The principle was not designed or intended to give the owner of the chattel more than he had to start with, but it was intended to assure he would not obtain his chattel in a condition of less value or usefulness than before it was changed by a third party. Thus, if the chattel was improved or enhanced and the improvements could not be severed from the chattel without injury to it, the improvements passed to the owner.

Bank of America v. J. & S. Auto Repairs (Ariz. 1985), 694 P.2d 246, 252

In Bank of America, the bank brought a replevin action to recover a van upon which the bank held a purchase money lien. The automobile repair shop which had repaired the van after its apparent abandonment by the mortgagor, filed a counterclaim. The Supreme Court of Arizona held that if detachable parts, such as the engine, transmission and tires, can be removed without damaging the vehicle, they are not accessions. Bank of America, 694 P.2d at 253. The Arizona court also determined that while a buyer and seller of a vehicle can make an agreement between themselves, they cannot bind third persons not parties to the agreement. Bank of America, 694 P.2d at 250.

Two years later, the Supreme Court of Oregon held in Bancorp

5

Leasing v. Stadeli Pump (Or. 1987), 739 P.2d 548, that because a truck engine is readily severable from the truck, the engine does not accede to the truck when installed by a third party after the old engine fails. Thus the Oregon court determined that the engine in Bancorp did not become subject to the bank's security interest in the truck under a security agreement giving the bank a security interest in all accessions. In Bancoro, the court stated that where the added part is owned by a third party, or where a third party has a security interest in the part, under the common law, courts ordinarily will not conclude that the part acceded to the vehicle unless it is not severable. Bancoro, 739 P.2d at 553.

In like manner, courts in other jurisdictions have ruled that parts that are easily detachable from a vehicle, such as an engine or tires, do not become accessions to the vehicle. See Rabtoay General Tire Co. v. Colorado Kenworth Corp. (Colo. 1957), 309 P.2d 616 (tires are detachable accessories and are not merged in motor vehicle upon which they are placed); Olive's Store v. Thomas (Okl. 1956), 294 P.2d 562 (seller of tires and tubes was entitled to replevin and to recover possession of tires and tubes from truck seller); Havas Used Cars v. Lundy (Nev. 1954), 276 P.2d 727 (engine is not an accession as it is readily detachable without damage to the rest of the automobile).

In the case before us, the District Court concluded that

> no reasonable juror could conclude that tires, rims, and lug nuts become such an integral part of a motor vehicle or trailer that one would have to cause damage to the vehicle or trailer in order to remove those items.

In addition, the District Court determined that even if a

reasonable juror could conclude that the tires became so affixed to the trucks that they became accessions, § 30-g-314, MCA, allows for the removal of items commonly treated as accessions under the common law. Section 30-g-314, MCA, provides, in part:

> Accessions. (1) A security interest in goods which attaches before they are installed in or affixed to other goods takes priority as to the goods installed or affixed (called in this section "accessions") over the claims of all persons to the whole except as stated in subsection (3) and subject to 30-9-315(1).

Paccar contends that it falls within the exception in § 30-9-314(3)(a), MCA, which recognizes **a** superior interest in any accession to the whole in favor of a subsequent good faith purchaser for value of the whole. However, Paccar does not qualify as a subsequent good faith purchaser of the whole (the trucks) as Paccar owned the whole (the trucks) prior to MPT's purchase of the tires from Les Schwab

Paccar also contends that under § 30-9-301(1)(c), MCA, its ownership interest in the tires is superior to Les Schwab's unperfected security interest. Section 30-9-301(1)(c), MCA, provides, in part:

> an unperfected security interest is subordinate to the rights of:
> .
> (c) in the case of goods, instruments, documents, and chattel paper, a person who is not a secured party and who is a transferee in bulk or other buyer not in ordinary course of business . . . to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected. .

Paccar contends that it is a buyer not in the ordinary course of business and that it gave value for the tires and received

7

delivery of the tires. Paccar's argument fails in several respects. First, Paccar incorrectly looks to its relationship with MPT, rather than with Les Schwab. Les Schwab was not a party to the lease between Paccar and MPT and is not bound by its terms. Bank of America, 694 P.2d at 250.

Second, Paccar is not a buyer. Buying requires an exchange of cash or other property, and a sale requires "the passing of title from the seller to the buyer for a price." Sections 30-1-201(9) and 30-2-106(1), MCA. Paccar gave no money or other property to Les Schwab or MPT subsequent to MPT's purchase of the tires from Les Schwab.

Finally, Paccar did not take delivery of the tires as required under § 30-9-301(1)(c), MCA. The tires were delivered to MPT, not Paccar.

Therefore, we conclude that Paccar had no interest in the tires purchased by MPT from Les Schwab, and we affirm the judgment of the District Court.

Issue 2.

Whether the District Court erred in granting summary judgment to ICNA because Paccar was not a named party to the surety bond and did not have an insurable interest in the tires.

The District Court concluded that since Paccar failed to establish any superior interests in the tires, Paccar has no claim to assert against the bond provided by ICNA. Paccar contends that, as an intervenor-defendant in Les Schwab's original claim and delivery action, Paccar is a beneficiary of the ICNA bond and

8

should thus be allowed to bring an action against the bond.

Section 27-17-205, MCA, makes the beneficiary of a bond the person or entity named therein. The person or entity named in the bond in this case was MPT, not Paccar. Furthermore, we held in Standard Sewing Machine Co. v. Smith (1915), 51 Mont. 245, 152 P. 38, that sureties protect only the parties named in the bond.

Since the ICNA bond was expressly written for the benefit of MPT, only MPT can act upon and enforce the bond. Accordingly, we affirm the District Court's grant of summary judgment to ICNA.

Issue 3.

Whether the District Court erred in determining that there were no genuine issues of material fact.

The District Court determined that Les Schwab, as the moving party, met its burden of proof in demonstrating that no genuine issues of material fact exist. Once that was accomplished, the burden then shifted to Paccar to prove, by more than mere denial and speculation, that a genuine issue does exist. Bruner, 900 P.2d at 903. The District Court concluded that Paccar failed to meet its burden.

Paccar contends that there are genuine issues of material fact that have yet to be resolved. According to Paccar, the unresolved issues are: (1) whether Paccar had actual knowledge of Les Schwab's prior security interest in the tires prior to Les Schwab's perfection, and (2) which tires are subject to Les Schwab's security interest upon perfection and which belong to Paccar.

The issues raised by Paccar are not issues of material fact.

9

Paccar's allegations of lack of actual knowledge are immaterial because Paccar fails to satisfy the other elements necessary for protection under § 30-9-301(1)(c), MCA. In addition, Paccar has demonstrated no ownership or security interest in the tires and there is no evidence that any of the tires repossessed by Les Schwab belonged to Paccar.

Accordingly, we hold that the District Court was correct in determining that there are no genuine issues of material fact in dispute.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

10

# CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Patrick G. Frank, Esq.
Worden, Thane & Haines
P.O. Box 4747
Missoula, MT 59806

John R. Velk, Esq.
Blakley & Velk
218 East Front, suite 208
Missoula, MT 59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _D. Gallagher_ 7/23/96
Deputy