[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Louis Steponaitis ("Steponaitis"), brought this action by complaint dated May 8, 2000, seeking compensatory and exemplary damages, attorneys' fees and costs from the defendant, Daniel Stoughton ("Stoughton"), based on a theory of conversion. The first count of the complaint alleges that Stoughton removed a quantity of stone from Steponaitis's property without Steponaitis's permission, therein the conversion. The second count of the complaint alleges that Stoughton's refusal to return the stone, when repeatedly asked to do so by Steponaitis, constitutes willful, reckless and wanton misconduct on the part of Stoughton. In his answer, Stoughton denied that he converted the stone. He also asserts that Steponaitis's entitlement to the stone was forfeited pursuant to General Statutes § 54-36a. The matter was tried to the court on September 11, and 12, 2001. The parties have submitted post-trial memorandum to the court.
Based on the testimony, the exhibits admitted and the credibility of the witnesses, the court could reasonably find the following facts as CT Page 1292 proven. On September 1, 1998, Steponaitis was the owner of approximately 200 tons of cut granite stone (the "stone"), which was stored on property owned by his spouse located on Norfolk Road in Torrington, Connecticut (the "property").
Steponaitis had salvaged the stone over a period of years from demolition sites and had stored the stone on the property.
Steponaitis intended to use the stone in the construction of a dwelling on the property.
In August of 1998, one Stuart Ormsby ("Ormsby") represented to Stoughton that he, Ormsby, was the owner of Steponaitis's stone.
Ormsby offered to sell some of Steponaitis's stone to Stoughton.
Stoughton believed that the stone belonged to Ormsby and agreed to purchase 100 tons of the stone at a price of $25 per ton.
Stoughton paid Ormsby $2500 on August 31, 1998, as per their oral agreement.
On September 1, 1998, Stoughton removed eighty tons of Steponaitis's stone from from the property and brought it to a property located at 179 Colebrook River Road in Winsted, Connecticut (the "Winsted property"). Stoughton removed forty-eight tons of "pink granite" stone and thirty-two tons of "black and white granite" stone.
Later on September 1, 1998, Stoughton learned from the Torrington police department that there was a question regarding the ownership of the stone.
The Torrington police department then advised Stoughton that the stone was to remain on the Winsted property and was not to be touched or moved.
The Torrington police considered the stone evidence for the state's criminal case against Ormsby.
On December 15, 1999, the court entered an order to return the stone to its owner. Steponaitis was advised of the December 15 order by letter on April 4, 2000.
Steponaitis had no reasonable means at his disposal to transfer the stone from the Winsted property. CT Page 1293
The December 15, 1999 order was amended on October 16, 2000, turning the stone over to Stoughton.
"Conversion occurs when one, without authorization, assumes and exercises the right of ownership over property belonging to another, to the exclusion of the owner's rights." (Citations omitted; internal quotation marks omitted.) Luciani v. Stop Shop Cos., 15 Conn. App. 407,409-410, 544 A.2d 1238, cert. denied, 209 Conn. 809, 548 A.2d 437
(1988). "[T]here are two general classes of conversion: (1) that in which possession of the allegedly converted goods is wrongful from the onset; and (2) that in which the conversion arises subsequent to an initial rightful possession." (Citations omitted; quotation marks omitted.) Id., 410. A tortious taking of personal property falls within the purview of the first class. See Luciani v. Stop Shop Cos., supra, 15 Conn. App. 407. This case, therefore, falls within the scope of the first class because Ormsby did not have rightful possession of the stone at the onset when he sold it to Stoughton. Additionally, one who is in possession of stolen property has no rights superior to those of the thief, and therefore, cannot assert a claim to the property even if he came into possession of the property by good faith. Atlas Ins. Co. Ltd. v. Gibbs, 121 Conn. 188,192, 183 A. 690 (1936). Stoughton's possession of the stone was, therefore, wrongful at the onset. A "defendant may be liable for conversion where he has in fact exercised dominion or control, although he may be quite unaware of the existence of the rights with which he interferes." Luciani v. Stop Shop Cos., supra, 15 Conn. App. 407, 411. Thus, he may be a converter when he dispossesses another of a chattel in the entirety reasonable belief that it is his own, or where he innocently buys stolen goods." Id., 412. It has been recognized, however, that in situations "where stolen property is purchased in good faith from one who is the apparent owner, in the belief that the seller has good title which he can convey, does not fall strictly within the [first class]. . . ."Atlas Ins. Co. Ltd. v. Gibbs, supra, 121 Conn. 188, 194. Courts have held that to maintain an "action for conversion [against an innocent purchaser,] demand and refusal before suit must be shown." Atlas Ins. Co.Ltd. v. Gibbs, supra, 121 Conn. 188, 194; Coleman v. Francis,102 Conn. 612, 129 A. 178 (1925). "The rule is a reasonable and just one, that an innocent purchaser of personal property from a wrongdoer shall first be informed of the defect in his title, and have an opportunity to deliver the property to the true owner, before he shall be made liable as a tort feasor for a wrongful conversion. (Emphasis added.)Atlas Ins. Co. Ltd. v. Gibbs, supra, 121 Conn. 194. "[T]he rules does not apply . . . when the facts are that prior to the institution of the action, defendant had full information relating to [his] own defect in title and the identify of the true owner." Employers' Fire Ins. Co. v.Cotten, 245 N.Y. 102, 106 156 N.E. 629 (1927). Demand and refusal are unnecessary here. Stoughton was informed of the defect in his ownership CT Page 1294 of the stone the day he took possession of it. Stoughton made no effort to return the stone to Steponaitis. Moreover, Stoughton had frill information of the defect, as well as, knowledge of the identity of the true owner of the stone when the court entered the order of December 15, 1999. Because Stoughton's possession in the stone was wrongful at the onset and the requirement of a demand and refusal are unnecessary here, Stoughton is liable for wrongful conversion. "A person who purchases or accepts the possession of stolen personal property is often regarded as liable for the. conversion thereof. . . . In some cases, the same result is reached even though the defendant acted in good faith, without notice, and in reliance on the thief's representations of ownership." 18 Am. Jr.2d, Conversion § 37, citing, Swim v. Wilson, 90 Cal. 126
(1891).
The facts of this case demonstrate that Steponaitis has meet his burden of proof as to his claim of conversation against Stoughton. The finding that there was a conversion obviates the need to address the claims raised by Stoughton's special defense under General Statutes § 54-36a.
 In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. Collens v. New Canaan Water Co., 155 Conn. 477, 489, 234 A.2d 825 (1967). In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence. Triangle Sheet Metal Works, Inc. v. Silver, 154 Conn. 116, 128, 222 A.2d 220 (1966).
Venturi v. Savitt, Inc., 191 Conn. 588, 592, 468 A.2d 933 (1983).
The court finds that the facts in this case do not rise to a level which would satisfy the test to award punitive damages.
"It is generally acknowledged that the measure of damages in a conversion matter is the value of the goods at the time they were converted, with interest from the date of the wrongful act." Barron v.Benton Auto Body, Inc., Superior court, judicial district of Hartford at Hartford, Docket No. 573293 (December 21, 2000, Rubinow, J.); see Plikusv. Plikus, 26 Conn. App. 174, 178, 599 A.2d 392 (1991); Griffin v.Nationwide Moving Storage Co., 187 Conn. 405, 419-20, 446 A.2d 799
(1982). Our Supreme Court has held that in the absence of a contract which fixes the terms of recovery in the event of conversion or loss, the market value of the object at issue shall serve to establish the measure of damages, with the addition of applicable interest. See Griffin v.CT Page 1295Nationwide Moving Storage Co., supra, 187 Conn. 419.
The remaining issue, perhaps the most difficult, is determining the amount of damages to be awarded. The party claiming damages has the burden of proving them. Gargano v. Heyman, 203 Conn. 616, 620,525 A.2d 1343 (1987). Mathematical exactitude is not required where precise proof is not feasible. Hassane v. Lawrence, 31 Conn. App. 723,727, 626 A.2d 1336 (1993). In cases where damages are difficult to prove, the plaintiff must "prove damages with the precision which the facts permit, but no more." Johnson v. Healy, 183 Conn. 514, 515,440 A.2d 765 (1981). Generally, the measure of damages for conversion is the value of the goods at the date of the conversion. See WaterburyPetroleum Products, Inc. v. Canaan Oil Fuel Co., 193 Conn. 208, 222,477 A.2d 988 (1984); Barker v. Lewis Storage Transfer Co., 78 Conn. 199,200, 61 A. 363 (1905). "The cardinal rule is that a person injured shall receive fair compensation for his loss or injury and no more. . . . Commonly in cases of conversion the loss is the value of the property. . . . Commonly the value of the property as representing the owner s loss is its market value, if it have one, since thereby is indicated the cost of replacing." (Citations omitted.) Hirth v.Charbonneau, Superior Court, judicial district of New Britain at New Britain, Docket No. 388888 (July 23, 1997, Levine, J.), citing, Barker v. Lewis Storage Transfer Co., Supra,78 Conn. 200. The trier of fact weighs the evidence presented and evaluates the credibility of the testimony when arriving at an award of damages. Gargano v. Heyman, supra, 203 Conn. at 620.
Based on the full record and the reasonable inferences drawn from the evidence, and acknowledging the varying evidence relating to the stone, the court finds that Stoughton is responsible to Steponaitis for damages resulting from the conversion. Michael DeCorso, Steponaitis's expert, testified that the cost to hand finish a tone of stone would be "three, $400 per ton." He also testified that the cost of the unfinished "pink stone" is between $450 and $500 a ton." He further testified that the cost of the "black and white" stone "could be anywhere from $200 to $400 per ton unfinished." Stoughton then places a value of $8,000 on the stone, which is based on a doubling of the costs of "buying it and bringing it in." Based on the more credible evidence, the court finds that Steponaitis's figure is high and Stoughton's figure is low. The court finds that the value of the stone at the time of the conversion is $26,000.
The court finds that the most appropriate way to determine the value of the stone is to first determine the market value of the stone at the time it was removed. Then reduce that amount by a factor (which the court finds from the evidence should be 50%) to provide for the actual CT Page 1296 condition of the stone on September 1, 1998 and the issue as to the amount of the stone that was actually finished on the conversion date. The calculation of the value set out above is as follows:
 — pink stone 60% of 80 tons = 48 tons x $750/ton ($300 finishing cost + $450.00 for raw material) = $36,000
 — black and white stone 40% of 80 tons = 32 tons x $500/ton ($300 finishing cost = $200 for raw materials) = $16,000
— reduction factor = 50%
— Total damages = $26,000
CONCLUSION
Judgment shall enter for Steponaitis on his complaint in the total amount of $26,000.
Cremins, J. CT Page 1297