[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION AND ORDER OF REPLEVIN
The plaintiff; Rita Rapuano (Rita), seeks temporary and permanent injunctive relief, damages, interest, and attorney's fees from the defendant, Gina-Lee S. Rapuano (Gina), in this action in four counts sounding in breach of contract, quantum meruit, conversion and unfair trade practices. The primary remedy sought by the plaintiff is "[t]hat a temporary and permanent injunction may issue commanding the defendant to relinquish possession of the horse known as Cloud Pleaser (Cloud) arid return the horse to Rita Rapuano." Gina, in turn, seeks by way of counterclaim temporary and permanent injunctive relief, damages, attorney's fees and sanctions for the filing of a frivolous complaint. On September 19, 2001, the court heard evidence on the application for temporary injunction. By stipulation of the parties, the court will treat the hearing as a trial in which both parties are seeking a permanent injunction. "It is not uncommon for a hearing on a temporary injunction to be converted, with the consent of the parties, to a hearing on a permanent injunction." Doublewal Corp. v. Toffolon, 195 Conn. 384, 392,488 A.2d 444 (1985).
Despite the labels affixed by Rita in her pleadings her action is essentially seeking a prejudgment and permanent order of replevin claiming trover by Gina. Gina is also seeking physical possession of the horse or, in the alternative, monetary damages. Both parties have made it clear that they prefer judgment for possession of the horse in specie to a judgment for money damages.
Since General Statutes §§ 52-522[1] and 52.524[2] forbid the commingling of an action of replevin with any other cause of action except conversion of the goods described in the writ, the parties may not pursue other causes of action in this matter except those sounding in replevin or conversion. To proceed otherwise would thwart the provisions of General Statutes §§ 52-522 and 52-524 merely because the parties chose not to use the word replevin in their pleadings.
 I FACTS
The testimony of the parties was consistent as to certain facts. Both Rita, the mother, and Gina. the daughter, own horse farms. Each woman owns several horses. Both farms give riding lessons to the general public and train horses; both have breeding and foaling capability. Gina also CT Page 14010 boards horses belonging to others. For many years the parties have cooperated in their business operations; the relationship has been symbiotic. Rita has informally helped Gina with chores at some of the horse shows that both have attended. She has also given at least two horses to Gina and has sold a third horse to her for $500. Rita has chosen to overlook the fact that Gina never actually paid her the $500. On occasion Rita has taken on the boarding of some of Gina's horses for short periods of time when Gina's farm has experienced flooding. Gina has boarded one or more of Rita's horses in the past for short-term rehabilitation; Rita has boarded one or more of Gina's horses for short periods of time for rehabilitation. Neither party ever demanded or expected monetary compensation for the boarding of the other's horses. In November, 2000, Rita took her horse Cloud, a thoroughbred mare, to Gina's farm. The horse was not pregnant at that time, but was thin and tired. Gina has refused to return the horse to Rita despite Rita's demands for the return of the horse.
Cloud is pregnant now. In March, 2001, one of Gina's stallions broke loose and mounted Cloud. The veterinarian's confirmation that Cloud is pregnant became known early in September, 2001, after the commencement of this lawsuit. The foal is due to be dropped February 10, 2002.. Both parties see Cloud's pregnancy as an enhancement to her value rather than a detriment.
The only evidence produced as to the monetary value of Cloud was that she was worth about $1500 in a rundown condition, 32800 in her current good condition if she were not pregnant, and 34200 in her current good condition with pregnancy. Neither party disputes these valuations.
The evidence presented by the opposing parties is contradictory as to the substance of the transaction between them. It is Rita's version of the facts that she had arranged with Gina for a temporary stay by Cloud at Gina's farm. As a result of nursing two foals for several months, Cloud was debilitated. She needed rest, relaxation and, most of all, separation from the foals in order to regain her weight and her strength. Because of the thinness of the horse and the consequent stress on her back, she was bucking at the canter. In exchange for boarding Cloud, Gina could use the horse for lessons involving walking and trotting, but not cantering or jumping. The horse was to be returned in the spring of 2001. Because Rita became dissatisfied with the care given to the horse by Gina, Rita began, as early as December, 2000, to demand the immediate return of the horse.
Gina's version of the facts is quite different. She claims that Rita sold Cloud to her for $1200. While it is true that the $1200 never actually has been paid, Gina still intends to pay Rita the 31200 at some CT Page 14011 unspecified time in the future. This was not the first horse that Rita had turned over to Gina without an immediate cash payment because Rita was not interested in reclamation projects. Rita bases her reputation primarily upon the production of foals and the giving of lessons at the beginner level. Rita herself no longer rides. Gina, on the other hand, gives more advanced lessons. Gina was in a position to train Cloud out of some bad habits that the horse had developed that made the horse unsuitable for beginners' lessons, specifically bucking and kicking out. Gina always intended to use Cloud for lessons of her more advanced students. Rita became interested in taking Cloud back only in June, 2001, when Rita suspected that Cloud was pregnant. In fact, Rita made no demand for the horse until August, 2001.
Upon a consideration of the totality of the evidence, Rita's version of the arrangement is the more credible. "[I]t is well established that the evaluation of a witness' testimony and credibility is wholly within the province of the trier of fact." (Internal quotation marks omitted.)Opotzner v. Bass, 63 Conn. App. 555, 564-565, ___ A.2d ___ (2001), cert. denied. 257 Conn. 910, ___ A.2d ___ (2001). Gina's claim that she owns the horse has been seriously undermined by her nonpayment of any portion of the alleged purchase cost; her bill to Rita on August 15, 2001, claiming to be owed six months of boarding and training fees for Cloud; her further bill to Rita for the month of September, 2001 for the boarding and training of Cloud; and her August demands through her sister Karen for payment of money by Rita plus the papers for the horse Quincy in exchange for the return of Cloud Pleaser. Gina acknowledges that she has derived revenues from the use of Cloud for lessons and shows while the horse has been in her possession. The court finds that Cloud was on loan to Gina from Rita and that Gina's use of the horse for lessons and shows was reasonable consideration for the care and training of the horse. The rehabilitation of Cloud by Gina was also in exchange for past similar services rendered to Gina by Rita in the rehabilitation and boarding of Gina's horses without the payment of money.
 II DISCUSSION
A. REPLEVIN
"The remedy [of replevin] is purely statutory. The plaintiff must prevail by the strength of his title rather than by the weakness of the defendant's. He must show an immediate right to possession of the property at the time of bringing the action." D'Addario v. Abbott,128 Conn. 506, 508, 24 A.2d 245 (1941). Since an 1863 amendment to the replevin statutes in Connecticut, a writ of replevin may be used to CT Page 14012 enforce rights of action related to any property in any manner unlawfully detained and the action thus authorized is in the nature of an action of trover. Belknap Savings Bank v. Robinson, 66 Conn. 542, 547-48, 34 A. 495
(1895). The case just cited details the legislative history of the replevin statutes in Connecticut. To secure an order of replevin the plaintiff must establish that (1) the horse falls into the category of "goods or chattels" within the meaning of General Statutes § 52-515; (2) the plaintiff has a "property interest" in the horse; (3) the plaintiff has a right to immediate possession of the horse; and (4) the defendant has wrongfully detained the horse. See Cornelio v. StamfordHospital, 246 Conn. 45, 49, 717 A.2d 140 (1998).
Gina has argued that the "best interests of the horse" is a criterion to be considered in this case. Although that standard is consistent with the parties' stated views that Cloud is more valuable to them than their own relationship as mother and daughter, it is not an appropriate consideration in this case. This is not a child custody case. This is an action to recover a chattel within the meaning of General Statutes §52-515.[3] Connecticut has long recognized horses as "goods or chattels" in the context of replevin. See, e.g., Harrison v. Clark,74 Conn. 18, 49 A. 186 (1901); Curnane v. Scheidel, 70 Conn. 13, 38 A. 875
(1897).
Rita has demonstrated that she bought Cloud in 1995, and never ceded the ownership of the horse to Gina or anyone else. Rita demanded the return of the horse from Gina. Rita is entitled to immediate possession of the horse. Gina has received fair consideration for her boarding, training and maintenance of the horse. In any case, she may not exact fees and costs for the boarding, training and maintenance of the horse when her detention of the horse has been wrongful.
B. CONVERSION
"The tort of conversion boasts a well established definition which is not disputed by the parties. Conversion occurs when one, without authorization, assumes and exercises the right of ownership over property belonging to another, to the exclusion of the owner's rights.... The seminal case in this state regarding conversion is Coleman v. Fronds,102 Conn. 612, 129 A. 718 (1925). ... Coleman established that there are two general classes of conversion: (1) that in which possession of the allegedly converted goods is wrongful from the outset; and (2) that in which the conversion arises subsequent to an initial rightful possession. Id., 615." (Citations omitted; internal quotation marks omitted.) Luciani v. Stop Shoe Cos., 15 Conn. App. 407, 409-10,544 A.2d 1238, cert. denied, 209 Conn. 809, 548 A.2d 437 (1988). This case falls into the latter category. The horse was delivered to Gina by CT Page 14013 Rita in November, 2000, by arrangement between the parties, but was withheld from the rightful owner when she sought the return of the animal.
C. DAMAGES
Although Rita demonstrated that she has made increasingly urgent demands for the return of the horse since the spring of 2001, she has shown no monetary losses associated with the deprivation of the horse's services in the intervening months. Depreciation in the value of the goods during the period of detention would be a proper element of damages. Staub v. Anderson, 152 Conn. 694, 696, 211 A.2d 691 (1965). In this case, however, all parties agree that the horse has been rehabilitated in health and temperament during its stay at Gina's farm. The accidental pregnancy has happily enhanced the value of the horse. Rita has not proven monetary damages from Gina's conversion of the horse. However, if Gina has enhanced the value of the horse during the time it has been at her farm, whether by design or by accident, then Rita will benefit from that increased value upon the return of the horse.
 III CONCLUSION
The plaintiff has produced convincing evidence that the defendant has detained the horse Cloud Pleaser, a horse which rightfully belongs to the plaintiff. Detention of the horse by the defendant has been wrongful. Judgment shall enter for the plaintiff for immediate possession of the horse. An order of replevin shall issue accordingly. If the parties are not able to agree upon a date and time for Rita to pick up the horse from Gina's farm, the pick-up shall take place on Thursday, November 1, 2001, at 10:00 a.m. No damages are awarded. The plaintiff is entitled to statutory costs.
Winslow, J.